In the Matter of the CITY OF NEWBURGH, Respondent, v PUBLIC EMPLOYMENT RELATIONS BOARD OF THE STATE OF NEW YORK, Appellant, and LOCAL 589, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO, Intervenor-Appellant.

Third Department, December 8, 1983

### APPEARANCES OF COUNSEL

*Martin L. Barr* (*Jerome Thier* of counsel), for appellant.

*William M. Kavanaugh, Corporation Counsel,* for respondent.

*Lombardi, Reinhard, Walsh & Harrison, P. C.* (*Richard P. Walsh, Jr.,* and *Michael T. McGarry* of counsel), for intervenor-appellant.

OPINION OF THE COURT

MAIN, J.

Petitioner and Local 589, International Association of Fire Fighters, AFL-CIO (IAFF), the recognized bargaining unit for petitioner's firemen, were parties to a collective bargaining agreement effective January 1, 1981 to December 31, 1982. During the term of this agreement and in response to petitioner's reductions in the number of fire fighters assigned to a shift, IAFF filed an improper practice charge with respondent alleging that petitioner had failed to negotiate the impact of the reductions in the shift manning levels. To settle this charge, petitioner and IAFF entered into a stipulation dated October 15, 1981 in which petitioner recognized its obligation to negotiate the impact of reducing the shift manning levels and further agreed that "one of the subjects of negotiation will be whether or not impact exists". Negotiations on whether the shift manning level reductions produced an impact on the terms and conditions of employment proved fruitless and, on December 21, 1981, IAFF filed a notice of impasse with respondent as it was less than 120 days before the end of petitioner's fiscal year on December 31, 1981 (see Civil Service Law, § 209, subd 1). IAFF also filed an improper practice charge claiming that petitioner failed to negotiate in good faith. On January 12, 1982, respondent appointed a mediator.

Thereafter, petitioner filed two improper practice charges alleging, *inter alia,* that IAFF failed to negotiate in good faith by filing a notice of impasse before a determination as to whether the reduction in shift manning levels produced an impact, that respondent had no jurisdiction to apply the impasse procedures of subdivision 4 of section 209 of the Civil Service Law during the course of an existing contract, and that respondent erred in assigning a mediator although there was no impasse. Petitioner was informed that this latter allegation, being directed against respondent, was not a proper subject of an improper practice charge and, in response, petitioner commenced this CPLR article 78 proceeding in the nature of prohibition seeking an injunction enjoining respondent from proceeding with mediation and binding arbitration, although no

petition for arbitration had yet been filed. IAFF was permitted to intervene and a preliminary injunction restraining respondent from imposing mandatory arbitration was granted. Thereafter, respondent consolidated the remaining improper practice charges and resolved them adversely to petitioner, concluding, *inter alia,* that the impasse procedures of section 209 of the Civil Service Law were available during the life of a contract "wherever there is a statutory obligation to negotiate and the parties fail to reach an agreement" (*Matter of City of Newburgh,* 15 PERB par 3116, p 3180). Special Term then granted petitioner's petition and prohibited respondent from imposing mediation and interest arbitration, concluding that section 209 of the Civil Service Law applies only to negotiations for a new contract. This appeal by respondent and IAFF ensued.

On this appeal, we are faced with the novel issue of whether respondent's authority to appoint a mediator or to impose compulsory interest arbitration as provided for by statute and regulation (see Civil Service Law, § 209; 4 NYCRR part 205) is limited to disputes arising from negotiations for a new contract or applies equally to disputes requiring negotiation which arise during the life of a contract. We note that respondent has concluded that it has authority to invoke the mediation and arbitration procedures during the life of a contract (*Matter of City of Newburgh,* 15 PERB par 3116, *supra*) and that, as the agency charged with interpreting and implementing the Taylor Law, of which section 209 of the Civil Service Law is a part, respondent's construction of the Taylor Law must be accepted if not unreasonable (see, e.g., *Matter of Incorporated Vil. of Lynbrook v New York State Public Employment Relations Bd.,* 48 NY2d 398, 404-405). We cannot say that respondent's determination that it has authority to appoint a mediator or to impose arbitration under section 209 of the Civil Service Law during the course of an existing contract is unreasonable. Such authority can only serve to promote the purposes for which the Taylor Law was enacted, most importantly to avoid strikes by public employees and to encourage voluntary resolution of labor disputes involving public employees (see Civil Service Law, § 200).

Furthermore, the statute contains no language suggesting that the mediation or arbitration procedures should be limited to impasses occurring in negotiations for new contracts and no sound reason is advanced to so limit the procedures. For example, it does not strike us as absurd or chaotic that further negotiations during the life of a contract may be required because an arbitration determination has a maximum two-year effective term (Civil Service Law, § 209, subd 4, par [c], cl [vi]) and a contract may have a longer term. Negotiations during the life of a contract are not unknown and, in fact, may be desirable in some instances. Moreover, respondent's rules of procedure provide sufficient opportunity for a party to challenge the imposition of arbitration and there is no limitation in these regulations which make them apply only to arbitration imposed while negotiating a new contract (see 4 NYCRR 205.3 *et seq.*). Also, the cases from other jurisdictions relied on by petitioner do not persuade us otherwise for they concern the inapplicability of statutory impasse procedures to individual grievances. In this case, the question of impact resulting from petitioner's policy decision to reduce the shift manning levels of the firemen constitutes a mandatory subject of negotiation (see *Matter of West Irondequoit Teachers Assn. v Helsby,* 35 NY2d 46, 51-52; *Matter of International Assn. of Firefighters v Helsby,* 59 AD2d 342, mot for lv to app den 43 NY2d 649),* which petitioner apparently recognized in the stipulation of October 15, 1981 when it agreed to negotiate such question of impact. Thus, this case does not concern grievances and associated procedures. For all these reasons, we conclude that respondent's interpretation that the mediation and arbitration provisions of section 209 of the Civil Service Law are applicable during the course of an existing contract is reasonable and must be accepted.

Having determined that respondent has authority to appoint a mediator and to invoke arbitration proceedings during the life of a contract pursuant to section 209 of the Civil Service Law, prohibition is not warranted herein (see

---

* We note that it is undisputed that petitioner had authority to reduce the shift manning levels as a basic policy decision of the municipality. In fact, article XXX of the collective bargaining agreement between petitioner and IAFF reserved to petitioner the right to reduce work force levels because of, for example, a lack of work.

*Matter of Schumer v Holtzman,* 60 NY2d 46, 51; *Matter of Morgenthau v Erlbaum,* 59 NY2d 143, 147) and Special Term must be reversed. If in the course of negotiations, including mediation, which respondent has required (see *Matter of City of Newburgh,* 15 PERB par 3116, *supra*), arbitration is sought, means are available to challenge the imposition of arbitration (see 4 NYCRR 205.6).

The judgment should be reversed, on the law, and the petition dismissed, with costs.

KANE, J. P., MIKOLL, YESAWICH, JR., and WEISS, JJ., concur.

Judgment reversed, on the law, and petition dismissed, with costs.