In the Matter of the Arbitration between BOARD OF EDUCATION, HUNTER-TANNERSVILLE CENTRAL SCHOOL DISTRICT, Appellant, and MARY MCGINNIS et al., as Co-Presidents of the Hunter-Tannersville Teachers' Association, et al., Respondents.

Third Department, April 12, 1984

### APPEARANCES OF COUNSEL

*Hancock & Estabrook (John T. McCann* and *James P. Burns, 3rd,* of counsel), for appellant.

*Bernard F. Ashe (Gunter Dully* and *Rocco A. Solimando* of counsel), for respondents.

### OPINION OF THE COURT

LEVINE, J.

This case concerns the collective bargaining agreement entered into by the Hunter-Tannersville Teachers' Association (association), which is the bargaining representative

for the teachers involved herein, and the Hunter-Tannersville Central School District (district). The agreement was initially effective from July 1, 1978 through June 30, 1981. It provided (article V) for health insurance coverage under the New York State employees' health plan, with specific employer percentage contributions toward premiums. It also provided (article XII) for a grievance/arbitration procedure to resolve disputes over claimed violations of the agreement or "with respect to its meaning or application". On September 16, 1981, the parties executed a "Memorandum of Agreement" which extended the effect of the original agreement through June 30, 1984, including the provision for arbitration. The 1981 memorandum also expressly provided that the health insurance coverage for the members of the association specified under the original agreement would be continued, but that the "Association and the Superintendent of Schools * * * shall meet to examine insurance coverage offered by other companies" or, as an alternative, "a self insurance program".

On January 10, 1983, the district filed an improper practice charge with the Public Employment Relations Board (PERB), charging that the association had violated section 209-a (subd 2, par [b]) of the Civil Service Law and the 1981 memorandum of agreement by failing to negotiate in good faith concerning the health insurance carrier to be selected for the remainder of the contract term. While this matter was pending on appeal, PERB overruled a decision of a hearing officer and determined that it would accept jurisdiction over the charge because the provision of the parties' memorandum of agreement requiring them to meet and confer on health insurance unambiguously constituted a reopener clause, imposing on each party a duty to negotiate in good faith on that subject. PERB's decision states that its interpretation of the clause was based upon the parties' concession as well as the language used. PERB, therefore, remanded the matter for a hearing on whether the association had so failed to negotiate.

On January 12, 1983, the association submitted a grievance pursuant to the grievance procedure contained in the collective bargaining agreement, alleging that the district had breached the agreement by unilaterally changing

health insurance coverage from the State-wide plan provided for under the agreement to a self-funding program. After the preliminary steps of the grievance procedure failed to resolve this dispute, the association filed a demand for arbitration on January 24, 1983.

The district then brought the instant proceeding for a permanent, or, in the alternative, a temporary stay of the arbitration pending PERB's determination. Special Term denied the district's application for a stay. This appeal ensued.

The main thrust of the district's appeal is that a stay of arbitration is mandated here because public policy prohibits the submission to arbitration of the issue of whether it breached the collective bargaining agreement by unilaterally changing its employees' health insurance program. The district's reasoning is as follows: under the memorandum of agreement of September 16, 1981, the parties each promised (1) that the existing health insurance program would continue, but that (2) they would confer and negotiate toward finding a mutually agreeable alternative program. Since, concededly, the district unilaterally discontinued the prior coverage, the real question before the arbitrator was whether the district's obligation under the first promise was discharged by the association's breach of the promise to negotiate on a substitute program. However, this is the very same issue now pending before PERB, i.e., whether the association failed to negotiate in good faith as statutorily required by reason of the reopener clause. Permitting the arbitrator to decide this issue, the district argues, impermissibly impinges upon the exclusive jurisdiction of PERB over improper labor practice charges and creates potential conflict between the findings, conclusions and remedies determined by the arbitrator and those determined by PERB.

Undoubtedly, as the district has demonstrated, the issues pending before the arbitrator bear a relationship to the matter to be decided by PERB. Nevertheless, we have concluded that neither the overlap nor the potential for conflict is so great that, under the controlling precedent, judicial interference is required in advance of the arbitration process.

We deal again here with the scope of a judicially created doctrine for staying arbitration or vacating awards on nonstatutory grounds of public policy. Two related rationales have been invoked to justify its application. The first is derived from the same source in public policy that renders certain agreements illegal and hence unenforceable. Because public policy prevents parties from directly contracting away certain rights or responsibilities, the law will not permit them to achieve the same result indirectly by agreeing to abide by an arbitrator's award which will similarly dissipate those rights or responsibilities. Thus, where by statute boards of education are given the nondelegable right and responsibility to make decisions on teacher qualifications and tenure, such boards may neither contract away their authority directly nor agree to arbitrate limits on such authority (*Board of Educ. v Areman,* 41 NY2d 527, 532-534; *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774, 776-777). By the same token, it has also been held that when a contractual dispute centers on a matter of important governmental policy or State interest, only a legally constituted tribunal and not an arbitrator may entertain jurisdiction over the controversy, since the informal, rule-free, virtually unreviewable arbitration process does not insure that contractual rights and responsibilities affected by the public interest will not be weakened or ignored (see, e.g., *Matter of Wertheim & Co. v Halpert,* 48 NY2d 681 [claim of discriminatory discharge in violation of civil rights laws]; *Matter of Aimcee Wholesale Corp. [Tomar Prods.],* 21 NY2d 621 [dispute over antitrust violations]; *Schneider v Schneider,* 17 NY2d 123 [child custody contests]).

The public policy doctrine has been sparingly applied to stay arbitration or vacate awards, however, because of the countervailing policy in favor of arbitration as an expeditious and economical alternative method of resolving legal disputes. Before courts may intervene in the name of the doctrine, the public policy at issue must be "a strong one, amounting to gross illegality or its equivalent", generally to be found in a "readily identifiable source in the statutes or common-law principles" (*Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.,*

45 NY2d 411, 422 [Breitel, Ch. J., concurring]). The conflict also has to be clear cut. The public policy barring arbitration must: "prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator. Stated another way, the courts must be able to examine an arbitration agreement or an award on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement" (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 631). Moreover, judicial interference in advance of the arbitration process may only be justified if "the arbitrators could not grant any relief without violating public policy" (*Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., supra,* p 417). At the least, the public policy issue has to be "inextricably intertwined with the other issues raised by the demand" (*id.,* at p 423). Short of this kind of relationship between the public policy question and the dispute to be arbitrated, judicial interference should await the results of the arbitration and a determination at that point made as to whether the award conflicts with policy.

With these limitations in mind, we turn to the case at hand. Even if we were to assume, *arguendo,* that the association's contractual and statutory duty to negotiate toward a new insurance program is a matter of strong public policy, we do not find that the district has met its burden of demonstrating that a stay in advance of arbitration is required. Facially, the issues before PERB and the arbitrator are not the same. They focus on different acts or failures to act and on different clauses in the collective bargaining agreements' provisions concerning health insurance. This contrasts with *Matter of Wertheim & Co. v Halpert* (48 NY2d 681, *supra*), principally relied upon as authority by the district, where the legality of a single act of employee discharge was the only matter to be decided by both the arbitrator and in a pending court action. Here the arbitration demand literally calls for only a determination of whether the district breached a typical health insurance provision of a collective bargaining agreement. The arbitration clause in the agreement is also of a common variety. Neither the demand nor any of the relevant contract

provisions directly conflicts with readily identifiable public policy. It is only through the district's defensive posture here (that it was relieved of its obligation to maintain existing coverage by the association's breach of duty under the next succeeding clause of the agreement) that any potential conflict between the arbitration and PERB's jurisdiction is shown to exist. This argument, however, in effect requires us to engage in precisely that "extended factfinding or legal analysis" which *Matter of Sprinzen (Nomberg)* (46 NY2d 623, 631, *supra*) directs courts to avoid in determining whether enforcement of an arbitration agreement is barred for public policy reasons.

Nor can it be said that the dispute before the arbitrator, involving as it does several clauses of the contract, competing equities and a wide range of remedies, is the identical matter over which PERB has exclusive jurisdiction. In this regard, *Matter of Zuckerman v Board of Educ.* (44 NY2d 336) is instructive. There, as here, a public employer allegedly took unilateral action in violation of a collective bargaining agreement (the discharge of teachers, abolishment of positions and replacement of staff through new appointments). This was made the basis of a charge before PERB that the employer failed to negotiate in good faith, and then a court proceeding in which the legality of the employer's acts was challenged on separate statutory grounds. The court's holding in *Zuckerman* that, despite even more clearly related issues, PERB's exclusive jurisdiction over improper labor practices did not prevent the companion litigation from proceeding, is persuasive of the same conclusion here.

Likewise, we do not find that the issues in the two proceedings here are so inextricably intertwined as necessarily to entail any public policy conflict in their outcomes. For example, even if PERB were to find that the association failed to bargain in good faith, a determination which might then be binding upon the arbitrator under principles of *res judicata* (see *Matter of Wertheim & Co. v Halpert, supra,* p 683), the arbitrator, exercising the authority granted him under the broad arbitration clause in the subject agreement, could construe the parties' promises to confer on substitute health insurance as separate from and

independent of their promises to continue existing coverage except by mutual consent. Under such a construction, the breach of the association's duty to negotiate would give rise to remedies other than discharge of the district's obligation to retain existing coverage, a result totally consistent with PERB's determination.

In summary, despite a demonstrable relationship between the issues to be arbitrated and the charge pending before PERB, the overlap is not so absolute or complete as to require a stay in advance of arbitration. Potential conflict in findings and remedies undoubtedly exists. But we cannot assume that the arbitrator, honestly and conscientiously interpreting the agreement and mindful that under PERB's interpretation (and the parties' concession) the association and the district agreed to negotiate on a substitute insurance program, will by his determination sanction any act or failure to act by either party which is offensive to their statutory obligations in the collective bargaining process or be otherwise in conflict with public policy. If that ultimately should occur, it can be judicially dealt with through vacatur or modification of the award (*Matter of National Equip. Rental [American Pecco Corp.]*, 35 AD2d 132, 135, affd 28 NY2d 639).

For the foregoing reasons, Special Term's refusal to stay the arbitration should be affirmed.

MAHONEY, P. J., KANE, CASEY and WEISS, JJ., concur.

Order and judgment affirmed, with costs.