*169 OPINION OF THE COURT
Simons, J.
The narrow issue presented by this appeal is whether the statutory requirement of compulsory arbitration found in Civil Service Law § 209 (4) applies to "interest” disputes arising during the term of a collective bargaining agreement. We hold that it does.
In 1981, at a time when petitioner City of Newburgh and respondent International Association of Firefighters, AFL-CIO, had in force between them a collective bargaining agreement, the city twice reduced the number of firefighters working each shift. The union acknowledged that the existing agreement authorized the city’s unilateral action but it demanded negotiation of the impact of the reductions, contending that the action created a greater workload for the remaining firefighters and increased the danger to them in the performance of their duties. When the city refused to negotiate, the union filed an improper practice charge with respondent Public Employment Relations Board (PERB). It subsequently withdrew the charge when the city signed a stipulation to negotiate the matter. The parties were unable to resolve the dispute, however, and the union petitioned PERB for relief under Civil Service Law § 209.* The city filed a cross petition charging the union with an improper practice, alleging that the reduction *170 in staffing levels was expressly permitted by the existing agreement and that any dispute over the resulting impact had to be settled under the grievance and arbitration procedures of the agreement. PERB dismissed the city’s charge and has now ordered compulsory arbitration pursuant to section 209 (4). The city then commenced this article 78 proceeding challenging PERB’s ruling and after transfer to the Appellate Division that court dismissed the petition. The matter is before us by our leave.
The city’s position is twofold. First, it contends that this is no more than a grievance dispute and, since it has an agreement with the union which provides an arbitration procedure to resolve grievances, section 209 (4) does not apply and the matter must be submitted to arbitration pursuant to the agreement. Second, it contends that even if the statute does apply, the union may not obtain compulsory arbitration of the dispute during the term of the agreement. The union maintains that the present dispute involves a subject not covered by the existing agreement and that it must be settled by collective negotiations. Inasmuch as there is an impasse in the negotiations, it contends that the statutory remedies are available notwithstanding the existing agreement.
Preliminarily, the distinction should be noted between private arbitration which may be compelled because the parties have agreed to arbitrate the subject matter and public arbitration which may be compelled because the Legislature has mandated it under certain circumstances. Because most arbitration agreements limit the powers of arbitrators and prohibit them from adding to, subtracting from or modifying the agreement’s terms, private arbitration generally involves only the settlement of grievances concerning rights recognized by the agreement. The arbitrator is required to interpret and enforce its terms. Interest disputes, however, involve new matters to be settled by the parties through negotiations. Because the subject of the dispute is not governed by an existing agreement, the parties must negotiate to establish future rights, either by execution of a new agreement or by modification of the existing one (see, Elgin, Joliet & E. Ry. Co. v Burley, 325 US 711, 723; and see generally, Elkouri & Elkouri, How Arbitration Works, at 98-117 [4th ed]). Characterized broadly, grievance or rights arbitration seeks adjudica *171 tion while collective negotiation of interest disputes is more akin to legislation; it settles basic terms and conditions of employment not previously agreed upon. Notwithstanding that interest disputes are normally settled by negotiations between the parties, the Legislature has provided that if an impasse occurs in collective negotiations involving public employees, the remedies of Civil Service Law § 209, including compulsory arbitration in the case of police and firemen, may be invoked.
The agreement in this case expressly authorized the city to reduce manpower but it was silent on the parties’ rights with respect to the impact from such reductions. That being so, there was nothing the union could grieve nor any provision under the agreement an arbitrator could interpret or apply to sustain either the city’s or the union’s position on impact (cf. Matter of Board of Educ. v Yonkers Fedn. of Teachers, 40 NY2d 268). The dispute involved matters not covered by the contract, matters which by statute are subject to collective negotiations, i.e., "wages, hours, and other terms and conditions of employment, or the negotiation of an agreement” (Civil Service Law § 204 [3]; see also, § 201 [4]).
Section 209 provides that an impasse in collective negotiations exists when the parties fail to reach agreement at least 120 days prior to the end of the employer’s fiscal year (CPLR 209 [1]). The statute addresses the means of resolving the impasse in subdivisions (2), (3) and (4). Subdivision (2) provides that municipalities may enter into agreements with certified employee organizations providing procedures to be invoked in the event of an impasse and that in the absence of such an agreement or the failure of its procedures to resolve the impasse, the parties may request, or the Board may on its own motion render, assistance provided in subdivisions (3) and (4) of the statute. Subdivision (4) addresses the remedies for impasse between a municipality and its police or firemen and provides that if arbitration is required the determination of the public arbitrator shall be final and binding on the parties without the approval of the local legislative body or other municipal officials. Thus, subdivision (4) authorizing compulsory arbitration applies whenever there is an obligation to negotiate unless the parties have agreed upon a procedure for resolving impasse in their negotiations and have successfully pursued it.
The parties’ existing agreement provides for arbitration *172 of "any grievance or complaint”. Arguably, that language is broad enough to suggest that these parties might have intended to employ private arbitration to resolve interest disputes. The agreement, however, does not contain any reference, either expressly or by implication, to matters subject to collective bargaining, impasse in the bargaining process, or to the authority granted by section 209 (2) of the statute and it does not include any standards or limitations for the establishment of new rights subject to collective negotiations. In view of these omissions, and considering that collective bargaining is the favored method of resolving interest disputes, the reasonable interpretation of the agreement is that the procedure outlined was intended to apply to grievances involving rights contained in the existing contract and no more (see, Elkouri & Elkouri, op. cit., at 102, 108). Indeed, petitioner recognized as much in 1981 when it executed a written stipulation agreeing to negotiate impact with the union and did so until impasse occurred (see also, Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 51-52; Matter of Burke v Bowen, 40 NY2d 264, 268).
Nevertheless, the city contends that even if the existing arbitration clause does not encompass contract arbitration of interest disputes, as permitted by subdivision (2), compulsory arbitration cannot be required under subdivision (4) during the term of the existing agreement; the dispute must be settled by the negotiation of a new contract after the expiration of the present one. The city interprets the statute to read that there is no impasse in negotiations unless the parties fail to reach an agreement 120 days before the expiration of any existing agreement. The Legislature has provided otherwise in unmistakable terms. The statute states that an impasse occurs when the parties fail to reach agreement 120 days before the end of the municipality’s fiscal year. The time is relevant because of the city’s need to anticipate future budgetary needs and allocate its revenues to meet the expenses incurred as a result of resolving impasse. In this case, impasse occurred when the parties failed to reach agreement 120 days before December 31, 1981, the end of the city’s fiscal year, not 120 days before December 31, 1982, the date when the existing agreement expired.
Our construction of section 209 is supported by strong policy considerations. The purpose of article 14 of the Civil Service Law is to foster harmonious and cooperative labor relations in the public sector and to avoid strikes. Section 209 establishes *173 procedures for the resolution of employment disputes after the parties have reached an impasse in their attempt to resolve such disputes by negotiation. This is particularly important in the case of police and firemen because of the safety implications of unresolved labor disputes in those areas of employment. An interpretation of the statute which applies compulsory arbitration to impact disputes arising from a management decision during the term of a contract furthers that purpose because absent the availability of such procedures, a union would be required to assume a collective bargaining position which anticipated all management decisions that might be made during the life of a contract and the impact such decisions would have on terms and conditions of employment. Negotiations over such speculative matters could only impede the bargaining process by provoking bargaining over issues that might never arise.
In sum, we conclude the PERB’s determination was neither irrational, unreasonable nor infected with an error of law. Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Judgment affirmed, with costs.

The proceedings began with a declaration of impasse and the appointment of a mediator by PERB. The city unsuccessfully challenged that appointment in a prior article 78 proceeding (see, 97 AD2d 258, affd 63 NY2d 793). We affirmed the dismissal of the city’s petition seeking prohibition in that special proceeding because petitioner had not demonstrated a clear legal wrong or that it had no other available avenue of judicial relief (see, 63 NY2d, pp 795-796). That decision does not, therefore, involve the *170 same issue or have any preclusive effect in the present dispute (see, Kaufman v Lilly & Co., 65 NY2d 449, 455).