*492
 
 OPINION OF THE COURT
 

 Levine, J.
 

 The primary issue on this appeal is whether a complaint of a public employer’s unilateral change in a term and condition of employment that is expressly covered by its collective bargaining agreement (CBA) with an employee organization lies within the exclusive jurisdiction of the State Public Employment Relations Board (PERB), or may be resolved through the grievance procedures of the CBA.
 

 Petitioners are employed by the Susquehanna Valley Central School District as school matrons. By letter dated May 19, 1995, the school district notified each of them that their daily work schedule was to be reduced from eight hours to six. Pursuant to the nonbinding grievance machinery of the CBA, petitioners filed a grievance claiming a breach of article 11, § I,
 
 *493
 
 and article 15, § I of the CBA. Article 11, § I provided that “[a]ny changes in the District’s policy relevant to employees’ working conditions must first be negotiated with the CSEA * * * and mutually agreed upon, in writing, prior to being implemented.” Article 15, § I expressly provided that matrons (with one exception), as part of “[b]uildings and [g]rounds staff shall normally work an eight (8) hour day, forty (40) hour week.”
 

 The school district fully participated in each grievance stage. Petitioners’ claim was rejected at each stage including the final one, a hearing before respondent Board of Education. Petitioners then brought this CPLR article 78 proceeding to challenge the school board’s determination that the district had not breached the CBA, on the ground that it was arbitrary and capricious (see,
 
 Matter of Plainedge Fedn. of Teachers v Plainedge Union Free School Dist.,
 
 58 NY2d 902). They sought annulment of the determination, restoration of their full eight-hour workday as provided in the CBA, and damages for their lost wages. The Board of Education’s answer reiterated the position advanced by the school district throughout the grievance process: that the reference in article 15 of the CBA to a normal workday of eight hours should not be construed as a job security provision and that articles 5 and 24 of the CBA, preserving management prerogatives including the right to abolish positions and lay off employees, authorized the reduction in working hours as necessitated by fiscal and budgetary constraints.
 

 Supreme Court held that the terms of the CBA were clear and unambiguous in barring the school district from a unilateral reduction in daily working hours of matrons. The court ordered restoration of full time working hours and salary and benefits “unless/until the conditions of their said employment are altered in accordance with the provisions of the collective bargaining agreement.”
 

 The school board appealed to the Appellate Division, and raised for the first time the contention that Supreme Court lacked subject matter jurisdiction because the gravamen of the petition was a violation of the school board’s statutory duty to negotiate in good faith under the Taylor Law
 
 (see,
 
 Civil Service Law § 209-a [1] [d]) and, thus, was within the exclusive jurisdiction of PERB. A majority of the Appellate Division agreed (246 AD2d 714). This appeal is before us as of right on the two-Justice dissent at the Appellate Division
 
 (see,
 
 CPLR 5601 [a]). We now reverse and reinstate the judgment of Supreme Court.
 

 
 *494
 
 Petitioners’ breach of contract claim is not within the exclusive jurisdiction of PERB for two fundamental reasons. First, contrary to the position of the school board, adopted by the Appellate Division majority, petitioners’ complaint is not that the school board breached the CBA merely by failing -to negotiate on a matter (working hours) which by definition is a term and condition of employment subject to mandatory collective bargaining (see, Civil Service Law § 201 [4]; § 204;
 
 Board of Educ. v Associated Teachers of Huntington,
 
 30 NY2d 122, 127,
 
 overruled in part on other grounds Union Free School Dist. v New York State Human Rights Appeal Bd.,
 
 35 NY2d 371). Rather, petitioners allege that the district breached the CBA by unilaterally changing a working condition
 
 expressly covered
 
 by the CBA — the eight-hour working day for the matron position set forth in article 15, § I.
 

 The Taylor Law does not alter basic contract law principles regarding the finality and binding effect of terms and conditions upon which full agreement was achieved, merely because the contract in dispute is a collective bargaining agreement. Once the parties have performed their obligation under the Taylor Law of negotiating to the point of reaching an agreement on the subjects expressly covered by the CBA, that exhausts their statutory duty to bargain as to those subjects. Thus, when the dispute between the public employer and the employees’ representative arises during the term of an existing CBA, the statutory duty to bargain collectively (Civil Service Law § 204) and the improper practice of failing to do so in good faith (Civil Service Law § 209-a [1] [d]) apply only when the parties’ dispute is outside the terms of the CBA, but
 
 not
 
 when the condition of employment in question is expressly provided for in the parties’ agreement.
 

 We recognized this distinction in
 
 Matter of City of Newburgh v Newman
 
 (69 NY2d 166, 170-172) where we held that, while disputes over terms of employment expressly provided for in the CBA, that is, involving “rights recognized by the agreement” (i
 
 d.,
 
 at 170), are properly resolvable through the grievance/arbitration mechanism of the contract, there is a duty to bargain over disputes concerning new matters which, upon impasse, will be resolvable by the dispute resolution procedures of Civil Service Law § 209. “Because the subject of the dispute is not governed by an existing agreement, the parties must negotiate to establish future rights, either by execution of a new agreement or by modification of the existing one”
 
 (id.,
 
 at 170).
 

 
 *495
 
 PERB also has consistently recognized that disputes over subjects that have been expressly settled by the parties’ CBA do not invoke the statutory duty to bargain in good faith, and, thus, are outside of its jurisdiction. For example, in
 
 Matter of Levittown Union Free School Dist. (Nassau Educ. Ch., Civ. Serv. Empls. Assn.)
 
 (13 PERB 3014, at 3020), PERB stated:
 

 “Ordinarily, if a subject is dealt with in a collective agreement, both parties, by virtue of that agreement, are foreclosed from further negotiation on that subject for the life of the agreement”
 
 (see also, Matter of County of Nassau [Nassau Ch., Civ. Serv. Empls. Assn., Local 830],
 
 18 PERB 3034, at 3070).
 

 On the other hand, where the contract is silent respecting the matter in dispute, unilateral action by a public employer changing terms and conditions of employment violates the statutory duty to bargain and constitutes an improper practice
 
 (see, Matter of State of New York [Dept. of Transp.] v Public Empl. Relations Bd.,
 
 174 AD2d 905, 906 [upholding PERB’s finding of an improper practice by employer’s unilateral increase in working hours of “field” employees who were expressly excluded from provisions of the CBA on “workday” and “workweek”]).
 

 An exception to the rule that there is no statutory duty on the part of either the public union or public employer to negotiate a dispute over a contract provision on a term or condition of employment is where the contract itself unambiguously provides for a full reopening of negotiations on that subject. Under a reopener clause, the statutory duty to bargain is revived, along with the statutory machinery for resolution of an impasse discussed in
 
 Matter of City of Newburgh v Newman (supra) (see, Matter of Board of Educ. [McGinnis],
 
 100 AD2d 330, 331).
 

 In the instant case, however, the CBA does not contain any full reopener clause, and the Board of Education has never claimed that it does. To the contrary, article 10, § II of the CBA specifically provides that only “[u]pon mutual consent of both parties” may negotiations be reopened. Additionally, while article 11, § I requires
 
 the district
 
 to negotiate for changes in policy, it ultimately gives the employee organization a veto on reopener by requiring its consent before any change can be implemented.
 

 Since the subject of this dispute (matrons’ work hours) was covered by a provision of the CBA, neither party had a statutory duty to negotiate changes in those hours. It necessarily
 
 *496
 
 follows that the school district’s unilateral change cannot constitute the improper practice of failure to bargain in good faith. Rather, it was a breach of the CBA remediable through the contractual grievance procedure agreed upon by the parties. Obviously, that was the assumption of both parties here, in voluntarily participating in the grievance process. The rules of the game did not change when petitioners availed themselves of the right to judicial review of the outcome of the nonbinding grievance process.
 

 Perhaps an even greater impediment to the school board’s position that PERB had exclusive jurisdiction over petitioners’ claim is the limitation on PERB’s exercise of jurisdiction set forth in Civil Service Law § 205 (5) (d):
 

 “[T]he board shall not have authority to enforce an agreement between an employer and an employee organization and shall not exercise jurisdiction over an alleged violation of such an agreement that would not otherwise constitute an improper employer or employee organization practice.”
 

 Even before enactment of this restriction on PERB’s jurisdiction (L 1977, ch 429), PERB had itself concluded that it should no longer treat unilateral changes of terms and conditions of employment provided in a CBA as a violation of the statutory duty to bargain. In
 
 Matter of St. Lawrence County (St. Lawrence County Ch. of Civ. Serv. Empls. Assn.)
 
 (10 PERB if 3058, at 3102), PERB overruled
 
 Matter of Town ofOrangetown (Town of Orangetown Unit, Rockland County Ch., Civ. Serv. Empls. Assn.)
 
 (8 PERB 3042, at 3069), its earlier precedent favoring the exercise of jurisdiction over breaches of contract affecting terms and conditions of employment.
 

 Instead, PERB expressly adopted the position of the dissent of the
 
 Town ofOrangetown
 
 case, that where the parties’ dispute centers on whether a public employer is required to act or withhold action by a provision of. the CBA, “ The enforcement of such obligation should be dealt with either by arbitration (if the parties had so agreed) or by a plenary action’ ”
 
 (Matter of St. Lawrence County [St. Lawrence County Ch. of Civ. Serv. Empls. Assn.], supra,
 
 at 3103). In
 
 Matter of St. Lawrence County (supra),
 
 the dispute between the parties centered on whether either a limited reopener clause or a management prerogative clause in the CBA covered the unilateral action of the employer in changing health insurance coverage. The legislative history of the restriction on PERB jurisdiction in
 
 *497
 
 Civil Service Law § 205 (5) (d) discloses that one of its express purposes was to overrule the
 
 Town of Orangetown
 
 decision and adopt PERB’s position in
 
 Matter of St. Lawrence County (St. Lawrence County Ch. of Civ. Serv. Empls. Assn.) (see,
 
 Mem of NY State Off of Empl Relations, Bill Jacket, L 1977, ch 429; Mem of Pub Empl Relations Bd, Bill Jacket,
 
 op. cit.).
 

 The school district argues that Civil Service Law § 205 (5) (d) does not restrict PERB’s jurisdiction in this case because the matrons’ claim that the school district breached the CBA is actually a claim for an unfair labor practice of failing to negotiate prior to making the change
 
 (see,
 
 Civil Service Law § 205 [5] [d]). If we were to accept this interpretation, it would be impossible to distinguish any claim for breach of contract from a Taylor Law claim because virtually all contract breaches necessarily involve a unilateral change in the terms of the agreement. Obviously, the Legislature, in codifying the rule announced in
 
 Matter of St. Lawrence County (St. Lawrence County Ch. of Civ. Serv. Empls. Assn.) (supra),
 
 intended generally to withdraw jurisdiction from PERB over all disputes which are essentially contractual in nature. This must be so even when, had the parties’ dispute fallen
 
 outside
 
 the terms of the CBA, the unilateral change at issue would have constituted a violation of the statutory duty to negotiate over conditions of employment
 
 (see, Matter of City of Newburgh v Newman, supra).
 
 Otherwise the purpose of the jurisdictional limitation of section 205 (5) (d) would be completely undermined.
 

 Indeed, since the enactment of Civil Service Law § 205 (5) (d), PERB, the administrative body charged with implementation of the Taylor Law, has consistently interpreted that provision to deprive it of jurisdiction over failure-to-negotiate improper practice charges when the underlying disputes are essentially contractual, in favor of resolving the dispute through the parties’ grievance-arbitration machinery, or resort to the courts. Thus, in
 
 Matter of Levittown Union Free School Dist. (supra,
 
 at 3019), article IX of the CBA gave the employees’ organization “an opportunity to meet with the Board of Education * * * for the purpose of discussing agency shop.” The school board later refused repeated union requests for a meeting on the agency shop proposal, and the union then brought a failure to negotiate charge before PERB. PERB declined to accept jurisdiction pursuant to section 205 (5) (d). “Whether or not Article IX reflects an intention by the parties to have further negotiations regarding agency shop is solely a question of contract interpretation. It is not a proper question
 
 *498
 
 for this board to consider in this proceeding” (13 PERB, at 3020,
 
 supra).
 

 PERB has articulated various cogent criteria for determining whether the jurisdictional divestiture of Civil Service Law § 205 (5) (d) is triggered, based on the nature or origin of the parties’ claims regarding unilateral change which is the subject of the improper practice charge. Thus, PERB ruled that where the improper practice charge against the employer complains about a unilateral change in a program “that * * * was established
 
 under and as a result of an exchange of promises,
 
 it necessarily lies beyond our power to entertain”
 
 (Matter of Public Empls. Fedn. [State of New York (Dept. of Taxation & Fin.)],
 
 24 PERB 3034, at 3069 [emphasis supplied]). PERB has also held that section 205 (5) (d) deprives it of jurisdiction over a failure to bargain charge “when the parties’ collective bargaining agreement provides the charging party
 
 with a reasonably arguable source of right
 
 with respect to the subject matter of the charge”
 
 (Matter of Nassau Ch. Civ. Serv. Empls. Assn., Local 1000 [County of Nassau],
 
 25 PERB 3071, at 3146, 3147 [emphasis supplied]).
 

 Moreover, the courts have deferred to PERB’s interpretation of the restriction on its jurisdiction in Civil Service Law § 205 (5) (d). In
 
 Matter of Civil Serv. Empls. Assn., Local 1000 v New York State Pub. Empl. Relations Bd.
 
 (207 AD2d 589,
 
 lv denied
 
 84 NY2d 808), the court upheld PERB’s rejection of jurisdiction pursuant to section 205 (5) (d) in a case markedly similar to that at bar. Because of a fiscal crisis and the union’s rejection of the county’s request to reopen a 5.5% wage increase provided in the CBA, the county unilaterally instituted (purportedly under the management rights clause of the CBA) an employee furlough program to offset the wage increase. The Appellate Division found it a rational application of section 205 (5) (d) for PERB to have declined jurisdiction on the ground that the furlough dispute
 
 “arguably and reasonably
 
 was an issue of whether contractual rights had been breached,” and because the applicability of the management rights clause was “clearly a contractual issue beyond PERB’s jurisdiction” (207 AD2d, at 591 [emphasis in original];
 
 see also, Matter of Glens Falls Police Benevolent Assn. v New York State Pub. Empl. Relations Bd.,
 
 195 AD2d 933, 934).
 

 Here, the substance of the parties’ dispute and their respective rationales for the rights they have claimed, from the inception of the controversy to the instant appeal, lead unavoidably to the conclusion that Civil Service Law § 205 (5) (d) would
 
 *499
 
 foreclose PERB from exercising jurisdiction. The dispute centers on whether the provision in article 15 of the CBA regarding a normal workday of eight hours for school matrons is an enforceable job security clause. As we have noted, PERB rejects improper practice jurisdiction when the complaining party looks to a provision of the CBA for
 
 “a
 
 reasonably arguable source of right” to support its position
 
 (Matter of Nassau Ch. Civ. Serv. Empls. Assn., Local 1000 [County of Nassau],
 
 25 PERB, at 3147,
 
 supra).
 
 Furthermore, the school district and the school board have persistently relied upon management rights provisions in articles 5 and 24 of the CBA to justify the unilateral reduction in matrons’ daily working hours. The scope of the management prerogative clauses was, thus,
 
 “a
 
 contractual issue beyond PERB’s jurisdiction”
 
 (Matter of Civil Serv. Empls. Assn., Local 1000 v New York State Pub. Empl. Relations Bd.,
 
 207 AD2d, at 591,
 
 supra).
 

 The meaning of article 11, § I of the CBA, enjoining the school district from changing policies without negotiating with and obtaining consent of the matrons’ employee organization, is also at issue in the parties’ dispute, again precluding resort to PERB to resolve the controversy
 
 (see, Matter of Levittown Union Free School Dist. [Nassau Educ. Ch., Civ. Serv. Empls. Assn.],
 
 13 PERB 3014,
 
 supra).
 
 In all respects, the rights asserted by the parties to this controversy are derived from exchanges of promises in the CBA. The Civil Service Law § 205 (5) (d) jurisprudence of PERB, which in our view correctly reflects the legislative intent of the enactment, points the parties to a resolution of their dispute in this case through the nonbinding grievance procedures of the CBA (subject to judicial review), rather than through an improper employer practice charge before PERB for failing to negotiate in good faith.
 

 Consequently, the Appellate Division erred in dismissing the petition on the ground that PERB had exclusive subject matter jurisdiction over this controversy. Because we agree with Supreme Court that the CBA unambiguously precluded the school district’s unilateral action here, the judgment of Supreme Court should be reinstated.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court reinstated.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order reversed, etc.