[719 NYS2d 401]

In the Matter of City of Syracuse, Petitioner, v Public Employment Relations Board, Respondent, and Syracuse Fire Fighters Association, Local 280, IAFF, AFL-CIO, Intervenor.

Fourth Department, December 27, 2000

APPEARANCES OF COUNSEL

*Frederick R. Guy, Corporation Counsel,* Syracuse (*Terri Conti York* of counsel), for petitioner.

*Sandra M. Nathan, Public Employees Relations Board,* Albany, for respondent.

*Charles Christian Spagnoli,* Syracuse, for intervenor-respondent.

**OPINION OF THE COURT**

HAYES, J.

The issues raised in this CPLR article 78 proceeding concern the termination of General Municipal Law § 207-a benefits to two firefighters in the absence of negotiated procedures in place between petitioner, City of Syracuse (City), and intervenor, Syracuse Fire Fighters Association, Local 280, IAFF, AFL-CIO (Union), to determine whether such termination is warranted. For the reasons that follow, we agree with respondent, Public Employment Relations Board (PERB), that the City's unilateral implementation of such procedures constituted an improper practice under the Taylor Law (Civil Service Law § 200 *et seq.*) and thus conclude that PERB's determination to that effect should be confirmed.

**I**

Two firefighters employed by the City were injured in the line of duty and began receiving salaries and benefits pursuant to General Municipal Law § 207-a. The City received medical reports indicating that both firefighters were capable of performing light duty work. Pursuant to General Municipal Law § 207-a (3), the City's fire chief ordered them to report for light duty assignments. One firefighter reported for his light duty assignment, but arrived late and left early. The other firefighter refused to report for his assignment. The fire chief scheduled hearings before a deputy chief concerning the possible termination of the General Municipal Law § 207-a benefits of both firefighters. One firefighter appeared at his hearing and, at the conclusion, the deputy chief found that the firefighter had failed to comply in a reasonable and prudent manner with the fire chief's directive. Prior to the hearing concerning the other firefighter, the Union sent a letter to the fire chief advising him that the procedures to determine whether General Municipal Law § 207-a benefits should be terminated were a subject of mandatory bargaining and that the implementation of any procedures, including these hearings, without the approval of the Union would constitute an improper practice. Nevertheless, the City went forward with the hearing. The firefighter did not appear at his hearing, and the deputy chief conducted the hearing in his absence. At the conclusion of that hearing, the deputy chief found that the firefighter had will-

fully failed to comply in a reasonable and prudent manner with the fire chief's directive. The fire chief terminated the General Municipal Law § 207-a benefits of both firefighters.

On August 28, 1997, the Union filed an improper practice charge (later amended) with PERB, alleging that the City violated Civil Service Law § 209-a (1) (d) by unilaterally implementing procedures to determine whether to terminate General Municipal Law § 207-a benefits despite the Union's objection to those procedures on the ground that they were the subject of mandatory bargaining. In response, the City denied that it had violated the Civil Service Law, arguing that forfeiture of benefits under General Municipal Law § 207-a was not a subject of mandatory bargaining. The City further argued that the procedures that were used here were established through past practice, and thus the Union waived any right to bargaining with respect to those procedures. Finally, the City argued that the Union failed to file a notice of claim as required by section 8-115 (3) of the Syracuse City Charter, requiring dismissal of the charge.

A hearing was held on December 10, 1997 before an Administrative Law Judge (ALJ). The City's fire chief, the sole witness at the hearing, testified that there were no procedures in place to determine whether General Municipal Law § 207-a benefits should be terminated, and the City had not negotiated with the Union concerning appropriate procedures before conducting the hearings for the firefighters. The fire chief testified that, in his view, the procedures for General Municipal Law § 207-a hearings were not a subject of mandatory bargaining and that the City had implemented the procedures used for disciplinary matters, procedures agreed upon by the City and the Union.

The ALJ dismissed the improper practice charge. On the administrative appeal filed by the Union, PERB reversed the ALJ's decision and sustained the charge. The City commenced this CPLR article 78 proceeding seeking to annul PERB's determination. PERB asserted a counterclaim seeking judgment confirming the determination and dismissing the petition. For the following reasons, we conclude that the determination should be confirmed.

## II

▪ Pursuant to General Municipal Law § 207-a, a firefighter injured in the line of duty may continue to receive salary and benefits. Here, when the firefighters failed to comply with the

City's directive pursuant to General Municipal Law § 207-a (3) to report for light duty assignments, the City conducted hearings to determine whether to terminate their General Municipal Law § 207-a benefits, but the hearing procedures were established solely by the City. We note that we do not address the issues whether the hearings were required to protect the due process rights of the firefighters (*see generally, Matter of Uniform Firefighters of Cohoes v City of Cohoes*, 94 NY2d 686, 691-693), or whether the hearings as conducted were fair and reasonable; those issues are not before us. Rather, we must determine whether the City committed an improper practice by unilaterally implementing the procedures to be used in determining whether to terminate General Municipal Law § 207-a benefits.

The City's authority to make an initial determination to order a firefighter to report for a light duty assignment is not a subject of mandatory bargaining (*see, Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd.*, 85 NY2d 480, 483-487 [involving parallel statutory provision regarding light duty assignments for police officers]). The procedures for contesting the City's initial determinations under section 207-a (3) are, however, subjects of mandatory bargaining (*see, Matter of City of Watertown v State of New York Pub. Empl. Relations Bd.* [hereinafter *Watertown*], 95 NY2d 73, 79-81, *rearg denied* 95 NY2d 849). The Court of Appeals noted in *Watertown* that "the public policy of this State in favor of collective bargaining is 'strong and sweeping' * * * [and] [t]he presumption in favor of bargaining may be overcome only in 'special circumstances' where the legislative intent to remove the issue from mandatory bargaining is 'plain' and 'clear' " (*Matter of City of Watertown v State of New York Pub. Empl. Relations Bd., supra,* at 78). "Absent 'clear evidence' that the Legislature intended otherwise, the presumption is that all terms and conditions of employment are subject to mandatory bargaining" (*Matter of City of Watertown v State of New York Pub. Empl. Relations Bd., supra,* at 79). The Court concluded that the Legislature "expressed no intent" to remove from mandatory bargaining the review procedures for contesting an initial determination by the employer to report for a light duty assignment (*Matter of City of Watertown v State of New York Pub. Empl. Relations Bd., supra,* at 81).

In this case, the firefighters did not contest the City's initial determination to direct them to report for light duty assignments. Instead, one failed to report for duty, while the other

arrived late and left early, resulting in the determination of the City to hold hearings before it terminated the General Municipal Law § 207-a benefits of those firefighters. The City could not, however, unilaterally implement the procedures to be used in determining whether to terminate the section 207-a benefits. Those procedures were a subject of mandatory bargaining.

The City contends that, pursuant to *Watertown,* the procedures at issue must be negotiated only when the present collective bargaining agreement expires and that, in the absence of any negotiated procedures in place, it may unilaterally determine the proper procedures (*see, Matter of Uniform Firefighters of Cohoes v City of Cohoes,* 258 AD2d 24, 29, n 4, *affd* 94 NY2d 686, *supra*). We disagree. We find unpersuasive the contention of the City that to hold otherwise would place it in the untenable position of continuing to pay General Municipal Law § 207-a benefits to employees who refuse to perform light duty assignments until there are negotiated hearing procedures in place. That position is not untenable. The Union objected to the City's unilateral implementation of procedures to be used to determine whether to terminate General Municipal Law § 207-a benefits. Where, as here, a dispute not covered by the existing collective bargaining agreement arises during the term of an existing collective bargaining agreement, the parties to the agreement have a statutory duty to bargain collectively to resolve the dispute (*see,* Civil Service Law § 204; *Matter of Roma v Ruffo,* 92 NY2d 489, 494). A party's refusal to do so constitutes an improper practice (*see,* Civil Service Law § 209-a [1] [d]; *Matter of Roma v Ruffo, supra,* at 494). If the parties reach an impasse in negotiations, then the dispute may be resolved by the dispute resolution procedures set forth in Civil Service Law § 209 (*see, Matter of Roma v Ruffo, supra,* at 494; *Matter of City of Newburgh v Newman,* 69 NY2d 166, 171-173).

We conclude that, under the Taylor Law, the procedures to be used in determining whether to terminate General Municipal Law § 207-a benefits are a subject of mandatory bargaining. The City's unilateral implementation of such procedures constituted an improper practice (*see,* Civil Service Law § 209-a [1] [d]).

## III

█ The City next contends that it did not unilaterally change a term and condition of employment because the hearing procedures used here were an established past practice. At the improper practice hearing before the ALJ, the parties stipu-

lated that there were no negotiated hearing procedures in place concerning the termination of General Municipal Law § 207-a benefits. There was no evidence that the hearing procedures used by the City for the firefighters had previously been used for General Municipal Law § 207-a issues. The fire chief testified that the hearing procedures used by the City were also used for disciplinary matters. PERB's determination that those disciplinary hearing procedures do not constitute a "past practice" for issues of termination of General Municipal Law § 207-a benefits is supported by substantial evidence (*see generally, 300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176).

## IV

■ Finally, we address the City's remaining contention that section 8-115 (3) of the Syracuse City Charter bars the improper practice charge filed by the Union. That section provides: "*No action or special proceeding*, for any cause whatever, except as hereinafter provided, relating to city property or involving the rights or interests of the city shall be prosecuted or maintained against the city unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was served on the city, in the same manner as a summons under the CPLR, within three (3) months after the accrual of such claim. The provisions of this section shall not apply to an action or special proceeding founded upon tort which shall be governed by the provisions of sections 50-i and 50-e of the General Municipal Law" (emphasis added). We agree with both PERB and Supreme Court that this notice of claim provision does not apply to an improper practice charge filed by the Union against the City.

Although the terms "action" and "special proceeding" are not defined in the City Charter, they are defined in the CPLR. CPLR 105 (b) defines "action" as including a "special proceeding." Here, the improper practice charge filed by the Union was an administrative proceeding before an ALJ that was later appealed to PERB. The Court of Appeals has stated that "an administrative proceeding is not an action," citing CPLR 105 (b) (*Matter of Fiedelman v New York State Dept. of Health*, 58 NY2d 80, 82). If an administrative proceeding is not an "action," and an action includes a "special proceeding," then it necessarily follows that an administrative proceeding is not a special proceeding.

In addition, CPLR 103 (b) provides that "[a]ll civil judicial proceedings shall be prosecuted in the form of an action, except where prosecution in the form of a special proceeding is authorized." A "civil judicial proceeding" is defined as "a prosecution, other than a criminal action, of an independent application *to a court* for relief" (CPLR 105 [d] [emphasis added]). The improper practice charge was not a "civil judicial proceeding" (CPLR 105 [d]), because it was not an application to a court. It therefore was not an "action" or "special proceeding," because CPLR 103 (b) requires all civil judicial proceedings to be one or the other. Furthermore, procedures for "special proceedings" are set forth in CPLR article 4, and it is apparent from a review of those procedures that the improper practice charge filed here was not a "special proceeding."

In *Matter of Taylor v Vassar Coll.* (138 AD2d 70, 72), the Third Department held that "Statutes of Limitation set forth in the CPLR will not be applied to claims arising under the Workers' Compensation Law" because "a proceeding under the Workers' Compensation Law is not an action or special proceeding under the CPLR * * * but a statutory proceeding having its own rules as to limitations" (*see also, Luoma v Spearin, Preston & Burrows*, 282 App Div 612, 614-615, *affd* 307 NY 728). We conclude that, similarly, an improper practice charge under the Taylor Law is not an "action or special proceeding" subject to the notice of claim provision in the City Charter. Pursuant to Civil Service Law § 205 (5) (d), PERB is authorized "to establish procedures for the prevention of improper employer and employee organization practices." The Rules and Regulations of the Department of Civil Service promulgated pursuant to that section set forth a four-month Statute of Limitations for the filing of an improper practice charge (*see,* 4 NYCRR 204.1 [a] [1]). The Taylor Law, like the Workers' Compensation Law, is a statutory proceeding with "its own rules as to limitations" (*Matter of Taylor v Vassar Coll., supra,* at 72).

The City relies on Third Department cases holding that compliance with the notice of claim requirement in Education Law § 3813 is a condition precedent to PERB's exercise of jurisdiction over an improper practice charge (*see, Matter of Deposit Cent. School Dist. v Public Empl. Relations Bd.,* 214 AD2d 288, 290, *lv dismissed and denied* 88 NY2d 866; *Matter of Board of Educ. v New York State Pub. Empl. Relations Bd.,* 197 AD2d 276, 278, *lv denied* 84 NY2d 803; *see also, Matter of Board of Educ. v New York State Pub. Empl. Relations Bd.,* 250 AD2d 82, 84-85, *lv denied* 93 NY2d 805). In those cases,

the Third Department gave a "liberal construction" to the terms "action" and "special proceeding" in Education Law § 3813 (1) (*Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra,* 197 AD2d, at 278). The Third Department relied on two cases in which the Court of Appeals held that, in the absence of an agreement to the contrary, compliance with Education Law § 3813 was a condition precedent to arbitration, just as it is to a judicial action or proceeding (*Matter of Geneseo Cent. School [Perfetto & Whalen Constr. Corp.],* 53 NY2d 306, 311; *Matter of Board of Educ. [Wager Constr. Corp.],* 37 NY2d 283, 287). The Court of Appeals acknowledged that under the CPLR an arbitration is no longer classified as a "special proceeding," but nevertheless determined that the notice of claim requirement of Education Law § 3813 applies to arbitrations because the purpose of the requirement, to provide prompt notice of claims, "is equally well-served [when applied to arbitrations] as it is when applied to actions and special proceedings" (*Matter of Board of Educ. [Wager Constr. Corp.], supra,* at 289).

We conclude that the City's reliance on those Third Department cases is misplaced. Even if the terms "action" and "special proceeding" should be given a "liberal construction" within the meaning of Education Law § 3813, it cannot be said that the same liberal construction should be given to those terms within the meaning of section 8-115 (3) of the City Charter. There is no case law to support such a liberal construction of those terms in the context of the City Charter's notice of claim requirement. In addition, the provisions of Education Law § 3813 apply across the State, whereas the City Charter's notice of claim requirement applies only to actions or special proceedings brought against the City of Syracuse. It would thus be unfair for similarly situated civil service employees employed by other municipalities without such a notice of claim requirement to be allowed to pursue an improper practice charge against their respective municipalities without the necessity of filing a notice of claim while requiring the Union employees herein to file a notice of claim. Finally, both employers and employee organizations may file an improper practice charge with PERB (*see,* Civil Service Law § 209-a; *see, e.g., Matter of City of Watertown v State of New York Pub. Empl. Relations Bd., supra,* 95 NY2d, at 77; *Matter of Evans v Newman,* 71 AD2d 240, 242, *affd* 49 NY2d 904), and it would be inequitable to place a requirement on an employee organization that is not placed on an employer; an employee organization

would be required to file a notice of claim while an employer would not.

For the foregoing reasons, we conclude that the notice of claim provision in the City Charter is not applicable to improper practice charges filed with PERB.

## V

Accordingly, we conclude that PERB's determination should be confirmed, the counterclaim for enforcement granted, and the petition dismissed.

GREEN, J. P., HURLBUTT, KEHOE and BALIO, JJ., concur.

Determination unanimously confirmed, without costs, counterclaim for enforcement granted, and petition dismissed.