06-5725-cv
Adams v. Suozzi

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: December 6, 2007                    Decided: February 22, 2008)

Docket No. 06-5725-cv

_____

MICHAEL F. ADAMS, INDIVIDUALLY AND IN HIS CAPACITY AS PRESIDENT OF THE SHERIFF
OFFICERS ASSOCIATION, INC., JOHN DOE AND JANE DOE, BEING PERSONS IN THE BARGAINING
UNIT REPRESENTED BY THE SHERIFF OFFICERS ASSOCIATION, INC., AND WHOSE NAMES ARE TOO
NUMEROUS TO MENTION,

*Plaintiffs-Appellees,*

—v.—

THOMAS SUOZZI, IN HIS CAPACITY AS COUNTY EXECUTIVE OF THE COUNTY OF NASSAU,
HOWARD WEITZMAN, IN HIS CAPACITY AS COMPTROLLER OF THE COUNTY OF NASSAU, AND THE
COUNTY OF NASSAU,

*Defendants-Appellants.*

_____

B e f o r e :

STRAUB and HALL, *Circuit Judges*, and HAIGHT, *District Judge*.[1]

_____

Appeal from a judgment of the United States District Court for the Eastern District of
New York (Arthur D. Spatt, *Judge*), granting summary judgment to plaintiffs on the ground that
Nassau County's unilateral institution of a "lag payroll" procedure on union members'
paychecks violated plaintiffs' procedural due process rights. Because defendants provided pre-
deprivation notice of the lag procedure, and the collective bargaining agreement's grievance

---

[1]Honorable Charles S. Haight, Jr., of the United States District Court for the Southern
District of New York, sitting by designation.

procedures were adequate to remedy any potential right plaintiffs possessed to not have their pay lagged, we find no violation of the Due Process Clause. REVERSED.

_____

EDWARD A. BRILL, Special Counsel for Nassau County Attorney, Proskauer Rose LLP, New York, New York (Lorna B. Goodman, Nassau County Attorney, Mineola, New York, *on the brief*), *for Defendants-Appellants*.

MALCOLM A. GOLDSTEIN, Koehler & Isaacs, LLP, New York, New York, *for Plaintiffs-Appellees*.

_____

STRAUB, *Circuit Judge*:

This appeal requires us to consider whether the County of Nassau ("the County") violated the procedural protections of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution when it unilaterally instituted a "lag payroll" procedure on the paychecks of plaintiffs, who are members of the Sheriff Officers Association ("ShOA"), with the effect of deferring a percentage of each ShOA member's pay until he or she stopped working for the County. Because defendants provided pre-deprivation notice of the lag payroll, and the grievance procedures of the collective bargaining agreement that was in effect between the parties were adequate to remedy any potential right plaintiffs possessed not to have their pay lagged, we find no violation of the Due Process Clause. Accordingly, we reverse the judgment of the United States District Court for the Eastern District of New York (Arthur D. Spatt, *Judge*), *Adams v. Suozzi*, 448 F. Supp. 2d 448 (E.D.N.Y. 2006), and direct the District Court to enter judgment in favor of defendants on this claim.

**I. Background**

The genesis of this long-running dispute dates back to December 1999, when, faced with a threat of layoffs, several law enforcement unions, including ShOA, agreed to permit the

2

County to institute a lag payroll procedure during calendar year 2000 subject to the satisfaction of certain conditions. Under the lag procedure, ten days of pay of each union member would be deferred over the course of ten bi-weekly pay periods, and the deferred pay would be returned when the union member separated from service with the County.

However, the requisite conditions to the agreement between ShOA and the County were not met, and as a result, even as it began lagging the pay of employees who belonged to other unions, the County did not implement the lag procedure on ShOA members' paychecks.

In August 2001, ShOA and the County entered into a collective bargaining agreement ("CBA") that was to govern for the period January 1, 1998, to December 31, 2004. The CBA included provisions setting wage rates and specifying that members of the union were to be paid on a bi-weekly basis; it did not mention any right or lack thereof on the part of the County to institute a lag payroll procedure.[2] The CBA also contained a grievance procedure that could be used by the union or its employees to adjudicate "any dispute between the Union or employee and the County with respect only to the meaning, interpretation or application of a provision of this Agreement."

On August 27, 2003 – two years after the CBA went into effect – the County of Nassau's Office of Labor Relations informed ShOA President Michael Adams that it would begin to lag ShOA member salaries for the payroll period ending September 18, 2003. The County claimed it had the authority to do so under the conditional agreement that ShOA had signed in 1999. A

[2]The full text of the CBA was not included in the joint appendix to this appeal, but is referenced in the parties' briefs and was presented to this Court in a prior appeal in this case, *Adams v. Suozzi*, 433 F.3d 220 (2d Cir. 2005). Because the CBA was part of the record below and is relevant to this appeal, we consider it here. *See Computer Assocs. Int'l., Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992).

week after receiving the notice, Adams and other ShOA members sued the County in New York State Supreme Court, Nassau County, claiming that imposition of the lag procedure violated the New York Constitution, state statutory law, the CBA, and the Due Process and Contracts Clauses of the U.S. Constitution. The County removed the case to the United States District Court for the Eastern District of New York, and after plaintiffs failed to win a temporary restraining order, the County proceeded to lag the paychecks of the members of ShOA.

The County also moved to stay further proceedings in the case and compel arbitration. The District Court rejected this motion, and we upheld that decision on appeal. *Adams*, 433 F.3d 220. In January 2006, both sides moved for summary judgment on the federal constitutional claims; they did not address the state law claims. The District Court issued a split decision: it granted summary judgment to defendants on plaintiffs' substantive due process and contracts clause claims, but granted summary judgment to plaintiffs on their procedural due process claim.[3] The District Court held that the County violated the Due Process clause because (1) plaintiffs' earned salary constituted a "protectable property interest"; and (2) defendants, in unilaterally instituting the lag payroll procedure, deprived plaintiffs of that interest without providing a pre-deprivation hearing. *Adams*, 448 F. Supp. 2d 453, 455. Defendants moved for reconsideration, and after the District Court rejected that motion, defendants filed the instant appeal.

**II. Discussion**

"We review a district court's grant of summary judgment *de novo*." *Kapps v. Wing*, 404

---

[3]The District Court also dismissed plaintiffs' state law claims on the basis that its resolution of the procedural due process claim "granted all the relief that [plaintiffs] requested." *Adams*, 448 F. Supp. 2d at 457.

F.3d 105, 112 (2d Cir. 2005). "Summary judgment is only appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law." *Id.* In evaluating plaintiffs' procedural due process claim, we analyze "(1) whether plaintiffs possessed a protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they could be deprived of that interest." *Sealed v. Sealed*, 332 F.3d 51, 55 (2d Cir. 2003).

Plaintiffs argue that their contractual right to receive regular, non-deferred paychecks amounts to a constitutionally-protected property interest. Defendants counter that because the lag procedure resulted only in the deferral, not deprivation, of plaintiffs' wages, any contractual right plaintiffs possessed to be paid on a regular schedule is insufficient to invoke the protections of the Fourteenth Amendment. We need not decide this issue because we find that, even if plaintiffs are correct that their receipt of non-deferred wages amounts to a protected property interest, the County's pre-deprivation notice to ShOA, combined with the CBA's grievance procedures, were fully sufficient process under the Due Process Clause to protect that interest.[4]

The County informed ShOA of the pay lag procedure more than a week before it was to

_____

[4]The District Court did not consider whether the CBA's grievance procedures, in combination with the pre-deprivation notice provided by the County, were sufficient to satisfy due process. The District Court found that defendants had waived this argument because their "sole argument" regarding procedural due process was that there were sufficient *post*-deprivation remedies available to plaintiffs. *Adams*, 448 F. Supp. 2d at 454. We do not read defendants' submissions before the District Court so narrowly. Defendants specifically argued that plaintiffs' "failure to utilize the grievance and arbitration procedure of the CBA to redress the County's alleged breach of the CBA is an independent reason that [plaintiffs'] procedural due process claim will fail as a matter of law." Mem. of Law in Support of Defendants' Motion for Summary Judgment, Docket Entry 61, *Adams v. Suozzi*, No. 2:03-cv-04363 (E.D.N.Y. Jan. 26, 2006). This statement is sufficient to have raised the argument that the CBA's grievance procedures constituted a pre-deprivation remedy available to plaintiffs. Accordingly, the District Court's reliance on *DiBlasio v. Novello*, 344 F.3d 292, 302-04 (2d Cir. 2003), is inapposite, because in that case there was neither pre-deprivation notice nor an available grievance process under a collective bargaining agreement.

5

be implemented, and more than three weeks before the lag would first have been reflected in plaintiffs' pay checks. That gave ShOA sufficient time to file a grievance under the provisions of the CBA challenging the lag procedure as a violation of the CBA's terms setting wage rates and pay schedules. As noted above, ShOA and its members had the right under the CBA to adjudicate "any dispute" involving the "meaning, interpretation or application of a provision of [the CBA]," and nothing in the CBA's grievance procedures suggests that they were limited to after-the-fact violations of the CBA. Thus, to the extent that the pay lag procedure was inconsistent with the terms of the CBA, the grievance procedures of the CBA could have been utilized to remedy the breach. *See Roma v. Ruffo*, 92 N.Y.2d 489, 494 (N.Y. 1998) ("disputes over terms of employment expressly provided for in the CBA, that is, involving rights recognized by the agreement, are properly resolvable through the grievance/arbitration mechanism of the contract") (internal quotation marks and citation omitted).

We have held on several occasions that there is no due process violation where, as here, pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement. *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003) ("Courts have held that [a collective bargaining agreement's grievance procedures] providing for a hearing to contest a challenged employment decision, are sufficient to satisfy due process."); *Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (finding due process was satisfied "by the pre-deprivation notice and hearing rights provided in the grievance procedures under the [collective bargaining agreement]"); *see also Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 102 (1st Cir. 2002) (pre-deprivation notice and "the full arbitration afforded by the collective-bargaining agreement w[ere] more than sufficient to satisfy" due process

6

requirements) (cited with approval in *Harhay*, 323 F.3d at 213).  The Due Process Clause is implicated only when plaintiffs can establish that the grievance procedures in a collective bargaining agreement are an inadequate remedy.  *See Harhay*, 323 F.3d at 213; *Narumanchi*, 850 F.2d at 72.

Here, plaintiffs offer only a single argument as to why the CBA's grievance procedures were inadequate: filing a grievance "require[s] a bargaining relationship between the parties with respect to the point in contention," and, according to plaintiffs, there was no bargaining relationship concerning the lagging of payroll; as a result, the grievance procedures were inapplicable to this dispute.  This argument fails because the only potential source of plaintiffs' alleged right not to have their pay lagged is the CBA.  There is no federal or state constitutional provision or law requiring that governmental employees such as plaintiffs be paid 100 percent of their wages in every given pay period.  Plaintiffs must therefore rely exclusively on the CBA's provisions setting wage rates and bi-weekly pay schedules in order to argue that they possess a protected property interest.  *See Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005) ("only where a plaintiff can demonstrate that state law confers 'a legitimate claim of entitlement' to a particular [benefit] will a property interest in that [benefit] arise.") (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).[5]  Accordingly, plaintiffs' due process claim hinges on there having been a bargaining relationship between the parties with respect to the method by which plaintiffs were to be paid.  Absent such a relationship, plaintiffs have no due process claim.  Thus, to the extent plaintiffs possessed a constitutionally-protected property interest, the CBA's

---

[5] Plaintiffs' brief contends that because the lag payroll agreement never came into effect, the County's lag payroll plan necessarily violated plaintiffs' rights. However, the non-existence of such an agreement does not of itself create a protected property interest, which must arise (if at all) from the CBA which did exist.

7

grievance procedures were applicable, and because plaintiffs offer no other reason as to why these procedures were inadequate, we find that they provided all the process that was due to plaintiffs. *See Harhay*, 323 F.3d at 213; *Narumanchi*, 850 F.2d at 72.

For these reasons, we reverse the judgment of the District Court as it pertains to plaintiffs' claim under the Due Process Clause. We also vacate the District Court's dismissal of plaintiffs' state law claims because that dismissal was contingent upon plaintiffs' success on their due process claim. On remand, we leave it to the District Court to decide whether to invoke its discretion to exercise supplemental jurisdiction over plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3); *Purgess v. Sharrock*, 33 F.3d 134, 138 (1994) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. If, however, the dismissal of the federal claim occurs late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary.") (internal citation and quotation marks omitted).

**III. Conclusion**

The judgment of the District Court is REVERSED as it pertains to plaintiffs' procedural due process claim and VACATED as it pertains to plaintiffs' state law claims. The District Court is directed to enter judgment dismissing plaintiffs' procedural due process claim, and the case is REMANDED for further proceedings consistent with this opinion.