10-5248-cv
Coollick v. Hughes

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

_____

August Term 2011

Argued: January 4, 2012                    Decided: October 24, 2012

Docket No. 10-5248-cv

_____


LINDA COOLLICK,

v.                                                            *Plaintiff-Appellee,*

ABIGAIL HUGHES,

                                                              *Defendant-Appellant.*

_____


Before: WINTER and HALL, *Circuit Judges*, and HELLERSTEIN, *District Judge.*[*]

This is an appeal from a denial of a renewed motion for summary judgment. Defendant-

Appellant renewed her motion for summary judgment, arguing that she is entitled to qualified

immunity in the instant action in which she is alleged to have deprived Plaintiff-Appellee of

procedural due process. The United States District Court for the District of Connecticut

(Eginton, *J*.) denied the motion after concluding that a disputed issue of material fact existed as

to whether Plaintiff-Appellee received adequate notice comporting with due process before the

elimination of her position as a guidance coordinator. We hold that Defendant-Appellant's

conduct, even when viewed in the light most favorable to Plaintiff-Appellee, did not violate

---

[*] The Honorable Alvin K. Hellerstein, United States District Court for the Southern
District of New York, sitting by designation.

Plaintiff-Appellee's clearly established rights.  Defendant-Appellant is, therefore, entitled to qualified immunity.  The judgment of the district court is reversed, and we remand the case with instructions to enter summary judgment in favor of Defendant-Appellant.

REVERSED AND REMANDED.

John R. Williams, Esq., New Haven, Connecticut
*for Plaintiff-Appellee.*

Josephine S. Graff, Assistant Attorney General,
for, George Jepsen, Attorney General, Hartford, Connecticut
*for Defendant-Appellant Abigail Hughes.*

HALL, *Circuit Judge*:

This is an appeal from a denial of a renewed motion for summary judgment by the United States District Court for the District of Connecticut (Eginton, *J*.).  Defendant-Appellant Abigail Hughes ("Hughes"), the Superintendent of the Connecticut Technical High School System, renewed a motion for summary judgment, arguing that she is entitled to qualified immunity in this § 1983 action in which Hughes is alleged to have deprived Plaintiff-Appellee Linda Coollick ("Coollick") of her right to procedural due process.  The district court denied the motion after concluding that there existed a dispute of material fact as to whether Coollick received sufficient notice before the elimination of her position as a guidance coordinator at a Connecticut high school.  We hold that Hughes's conduct in this case, even when viewed in the light most favorable to Coollick, did not violate Coollick's clearly established rights.  Hughes is therefore entitled to qualified immunity.  The district court's judgment is reversed, and we remand the case with instructions to enter summary judgment in favor of Hughes.

-2-

*Factual Background and Procedural History*

The following facts are not in dispute, unless otherwise noted. Coollick began work with the State of Connecticut's Department of Education ("Department of Education") in 1994 and held various positions, in various schools and departments, before becoming a School Guidance Coordinator at Vinal Technical High School ("Vinal") in 2001. She became a tenured employee in 2003. Sometime later, during the 2005-2006 school year, Coollick approached Hughes, and the two discussed solutions to the apparent difficulty Coollick was having with the principal of Vinal. After several meetings and e-mails, Coollick took a position as a guidance counselor at Prince Technical High School ("Prince"), even though the guidance counselor position was a demotion. The parties dispute whether Coollick understood at that time that the position at Prince was durational in nature, as opposed to permanent. In October 2007, Hughes informed Coollick that she was being transferred to a durational position as a guidance counselor at Cheney Technical High School ("Cheney"), effective November 13, 2007. Coollick accepted the transfer after getting assurances from Hughes that Coollick could return to her position at Prince in March 2008. Coollick was advised by letter that she would experience "no changes to salary and benefits" in moving from Vinal to Prince and from Prince to Cheney. Joint Appendix ("JA") 169, 179.

On November 14, 2007, Hughes notified Coollick that her durational position at Cheney would be eliminated at the end of the 2007-2008 school year. The notice, in the form of a letter, apprised Coollick that (a) her position was being eliminated, (b) she had the right to apply to

other open positions within the school district, and (c) she could contact the Bureau of Human Resources with any questions.[1]  Hughes also thanked Coollick for her past service.

The record is unclear exactly what happened in the months after the notice was sent, but Coollick applied for several open positions at other schools in the district in May, July, and October 2008.  JA 131.  Coollick, a union member, believed that as a tenured, permanent employee, she was entitled to certain seniority, recall, and bumping rights under the collective bargaining agreement that allowed her, if laid off, to be the "first to fill any vacancy for which he/she is certified[,]" or to "bump a less senior permanent employee" provided that the laid-off employee has not refused an offer for a permanent position.  JA 163 (reproducing portions of the collective bargaining agreement between the Department of Education and the State Vocational Federation of Teachers, Local 4200A, American Federation of Teachers, AFL-CIO).  According to Coollick, her rights under the collective bargaining agreement were not honored when she applied for these positions.  Coollick also believed that Hughes had broken her earlier promise

---

[1] The letter itself reads:

Dear Ms. Coollick[:]

This is to advise you that the durational Guidance Coordinator position you currently hold will be eliminated at the end of the 2007-2008 school year.

I encourage you to make sure that your application is on file for those schools and subjects in which you are interested and are certified.

Applications for all vacancies should be directed to Cheryl [ ] at this address.

I thank you for your past service.  Should you have any questions or concerns, please contact Mr. Edward [ ] of the Bureau of Human Resources at [phone number].

Sincerely,
Abigail L. Hughes

JA 183.

that Coollick could return to Prince in March 2008. On August 11, 2008, Coollick commenced this lawsuit in the District of Connecticut, naming only Hughes as a defendant.

The Complaint alleged that the letter sent by Hughes on November 14, 2007, "announced to [Coollick] that [Coollick]'s job was 'durational' in nature and that it was being eliminated at the end of the 2007-2008 school year," which "deprived [Coollick] of a vested property right" without due process of law by failing to give Coollick any notice or opportunity to be heard. JA 10. Coollick sought compensatory and punitive damages, injunctive relief, and attorneys' fees and costs. Meanwhile, on August 25, 2008, two weeks after filing her complaint in this case, Coollick filed a grievance against her employer, the Department of Education, pursuant to the collective bargaining agreement, alleging that she was denied her rights under that agreement. Coollick requested to be made whole and to remain at Cheney for the 2008-2009 school year.

While the present action was being litigated in the district court, Coollick's grievance was also submitted for arbitration pursuant to the collective bargaining agreement. Both in the arbitration proceedings and in the district court, Coollick argued, *inter alia*, that she was a tenured, public employee entitled to certain protections, including a pre-termination hearing, prior to being laid off. The Department of Education (in the arbitration) and Hughes (in the district court) argued that Coollick was not entitled to due process protections because she was a temporary employee and whatever tenured status Coollick might have attained, she lost it by accepting the demotion and transfer to Prince. After a hearing, the arbitrator issued an award on November 30, 2009, concluding that the Department of Education violated the collective bargaining agreement. The arbitrator agreed with Coollick and ruled that nothing in the terms of the agreement, or in state law, lends support to the position that Coollick lost her tenured status

-5-

and accompanying rights. JA 293-94. The arbitrator did not discuss whether the collective bargaining agreement required some sort of pre-hearing prior to the arbitration, as Coollick had argued. The arbitrator ordered that Coollick be "reinstated with back pay and benefits," that "her seniority [be] restored," and that she be placed in a position within the school district in accordance with the collective bargaining agreement.

This favorable decision did not end the lawsuit pending in the district court. The parties had been proceeding with discovery. In September 2009, Hughes had moved for summary judgment on the grounds that Coollick did not have a right to continued employment because she had lost any tenured status. Hughes also argued that she was entitled to qualified immunity because she had acted reasonably and in good faith in her role as superintendent. The district court, on March 25, 2010, denied Hughes's motion, concluding that nothing supports Hughes's contention that Coollick lost her status by accepting a durational position. The district court also held that Hughes was not entitled to qualified immunity, ruling that "[a]t this stage, upon the evidence before the Court, it is not clear that defendant could reasonably have believed that she was not violating plaintiff's rights," for it was "clearly established under the law that tenure creates a right to continued employment." The district court ruled, however, that Hughes could reassert the defense at trial. JA 113.

At a status conference, following the March 2010 decision and order, the district court expressed to the parties its belief that the question of whether Coollick was in fact tenured "was a legal question that depended on how Conn. Gen. Stat. § 10-151 is read."[2] Special Appendix

---

[2] Under Conn. Gen. Stat. § 10-151(d), "[t]he contract of employment of a teacher who has attained tenure shall be continued" unless the contract is terminated for reasons enumerated. The district court wanted to focus the parties on the statutory definition of "tenure" in § 10-

("SPA") 2.  The district court instructed Coollick to file a motion for summary judgment to settle this question.

Coollick filed a motion for summary judgment in August 2010, but she omitted any discussion of how the statute affected her status.  Instead, Coollick, through her attorney, moved for summary judgement in her favor "as to her entire complaint."  JA 115.  Having been a tenured employee with the Department of Education since at least 2003, Coollick argued that she had a protected property right in her continued employment based on the collective bargaining agreement.  Hughes, Coollick argued, violated Coollick's due process rights by sending the letter on November 14, 2007, which "notified [Coollick] by mail that her job was being eliminated and she would be terminated as of June, 2008."  JA 119.  Coollick also argued that Hughes produced no evidence that could support a determination that she was entitled to qualified immunity.

Hughes responded by opposing Coollick's motion and by renewing her motion for summary judgment asserting that she had qualified immunity.  Hughes argued that even if Coollick had a property right in her continued employment, Coollick received all the process to which she was entitled by getting the notice she received and the benefit of the grievance and arbitration procedures provided for in the collective bargaining agreement.  Hughes also argued that as of November 2007, it was not clearly established that a plaintiff such as Coollick was entitled to anything more than notice as long as post-deprivation proceedings were available via a collective bargaining agreement.   To support this argument, Hughes relied in part on a summary order from this Court, *Plofsky v. Giuliano*, 375 F. App'x 151 (2d Cir. 2010), *aff'g in*

151(a), which in its view does not depend on whether a person holds a "durational" or "permanent" position.

*part, rev'g in part* No. 06-0789, 2009 WL 902360 (D. Conn. Mar. 31, 2009). In *Plofsky*, this Court affirmed a ruling of the district court in an unrelated matter that in turn concluded, based on well-established principles, that "there is no due process violation where 'pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in the collective bargaining agreement.'" 2009 WL 902360, at *15 (quoting *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008)). On these grounds, Hughes's renewed motion for summary judgment asserted that she is entitled to qualified immunity.

In response, Coollick moved the district court to strike Hughes's renewed motion, arguing primarily that a renewed motion for summary judgment may only be based on new law or newly discovered facts. Coollick also argued that the proper avenue to challenge a district court's decision on qualified immunity was through an appeal, not a renewed motion for summary judgment.

The district court, in a November 2010 decision, addressed Coollick's motion for summary judgment, Hughes's renewed motion for summary judgment, and Coollick's motion to strike. First, the district court held as a matter of law that Coollick was a tenured employee entitled to due process protections prior to being laid off. The court went on to rule that whether the protections afforded to Coollick were adequate under the law was a question for a jury. The court then addressed Hughes's renewed motion for qualified immunity, which the court said it "construe[d] . . . as a motion for reconsideration." In so doing it denied Coollick's motion to strike. The district court observed that Hughes "raises for the first time the argument that plaintiff received appropriate pre-termination due process." SPA 5. The court held that it was an issue of fact "whether the letter that [Coollick] received on November 14, 2007[,] constituted

sufficient due process," observing that the letter conveyed to Coollick "that her position would be eliminated, not whether she would be terminated." SPA 5-6. In light of the distinction it had drawn between "elimination" and "termination," the district court denied the renewed motion for summary judgment. The court also held that Coollick had a clearly established right to continued employment, and it was, therefore, objectively unreasonable for Hughes to terminate Coollick. The district court set the case for trial on the question of whether the procedures afforded to Coollick satisfied the requirements of due process. This appeal followed.

*Discussion*

## I.      Jurisdiction

Before we turn to the merits of the appeal, we must address whether we have appellate jurisdiction. Coollick advances two arguments that we are without appellate jurisdiction. Neither has merit.

To begin, we may generally hear appeals only from "final decisions" of the district court. 28 U.S.C. § 1291. One exception to this rule is the "collateral order doctrine," which allows for an interlocutory appeal if certain criteria are met. *See Bolmer v. Oliveira*, 594 F.3d 134, 140 (2d Cir. 2010); *Lora v. O'Heaney*, 602 F.3d 106, 111 (2d Cir. 2010). It is well settled that a decision denying a defendant the defense of qualified immunity satisfies the collateral order doctrine "to the extent that it turns on an issue of law . . . notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Coollick argues that this is not an appeal from a denial of summary judgment on qualified immunity grounds, but rather an appeal from a denial of a motion for reconsideration. We disagree.

Coollick is correct that under *Lora*, if we are asked to review on an interlocutory basis a denial of qualified immunity articulated in a ruling on a motion for reconsideration, we are without appellate jurisdiction. In *Lora*, this Court held "that the collateral order doctrine does not extend to" denials of motions for reconsideration. 602 F.3d at 111.

Hughes, however, did not style her motion as one for reconsideration. It was in response to Coollick's motion for summary judgment seeking explicitly to preclude qualified immunity as a defense that Hughes countered with a renewed motion for summary judgment asserting qualified immunity. The district court called Hughes's motion one for reconsideration, but it did not offer a rationale for doing so. The district court's disposition of Hughes's renewed motion, moreover, turned on what it identified as a disputed question of fact with respect to the argument, raised for the first time, "that plaintiff received appropriate pre-termination due process." By contrast, the denial of a motion for reconsideration is usually based on a decision not to revisit a prior ruling. *See id*. Despite the label the district court put on Hughes's renewed motion, in substance, the district court did not analyze that motion under the typical standard for disposing of motions for reconsideration. For all intents and purposes, the decision denied qualified immunity on the substantive merits of the arguments Hughes had advanced exactly as they had been asserted—by motion for summary judgment. On this appeal, we simply decide to treat Hughes's renewed motion for summary judgment as the district court in fact did, and thus we have jurisdiction to review the denial of qualified immunity on an interlocutory basis provided, as discussed below, we can determine that issue as a matter of law. *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995).

We also do not see *Lora* as a bar to this appeal because it was Coollick, not Hughes, that invited the district court to make a substantive ruling on qualified immunity. The district court had requested that Coollick file for summary judgment addressing the limited question of how Conn. Gen. Stat. § 10-151, dealing with teacher tenure, applied to Coollick's claims. Instead of focusing the district court on this narrow issue, however, Coollick's attorney moved on Coollick's behalf for summary judgment "as to her entire complaint," asserting that Hughes was not entitled to qualified immunity—a defense that the district court had previously and specifically allowed Hughes to present as a defense at trial. The principle underlying *Lora*'s rationale is that a motion for reconsideration does "not raise important issues" regarding the substantive merits of a qualified immunity defense. 602 F.3d at 111. Here, Coollick did indeed raise an important issue—an issue which if decided in her favor would subject Hughes to all the damages (including attorneys' fees) sought in Coollick's complaint.

That being the case, once Coollick moved for summary judgment as to her entire complaint, the court was free to revisit any prior ruling and award or deny summary judgment to any party. *Cf. Lowenschuss v. Kane*, 520 F.2d 255, 261 (2d Cir. 1975); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 1998) ("The weight of authority . . . is that summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56."). However one labels Hughes's renewed motion, the district court's decision addressed the merits of Hughes's arguments.

Coollick also argues that we are without jurisdiction because issues of fact predominate the determination of qualified immunity in this case. Coollick is correct that as an appellate

-11-

court we cannot decide questions of fact and are without jurisdiction to review "a district court's denial of summary judgment insofar as the court's order determines that the record presents a 'genuine issue of fact for trial.'" *Lennon*, 66 F.3d at 422 (quoting *Johnson v. Jones*, 515 U.S. 304, 320 (1995)). "[W]here a court's denial of summary judgment is based on a determination that certain factual findings are essential to resolving the qualified immunity question, the denial is not reviewable under the collateral order doctrine . . . ." *Id.* This Court can, nonetheless, "review a denial of qualified immunity to the extent it can be resolved on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted).

Here, the disputed fact (whether the notice conveyed termination notice or elimination notice) is not essential to our deciding the merits. A "district court's mere assertion that disputed factual issues exist . . . is not enough to preclude an immediate appeal." *Id.* (internal quotation marks omitted). Viewing the facts in the light most favorable to Coollick, we can still decide this appeal on the applicable law.

## II.     Qualified Immunity

We review a district court's denial of a motion for summary judgment sounding in qualified immunity *de novo*. *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003). "On a motion for summary judgment, of course, the moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle him to judgment as a matter of law, and in ruling on such a motion, the district court must draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing

-12-

summary judgment." *In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996) (internal citation and quotation marks omitted).

Qualified immunity protects federal and state officials from money damages and "unnecessary and burdensome discovery or trial proceedings." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). "Qualified immunity is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." *In re State Police Litig.*, 88 F.3d at 123. Thus, a decision dismissing a claim based on qualified immunity at the summary judgment stage may only be granted when a court finds that an official has met his or her burden demonstrating that no rational jury could conclude "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (internal quotation marks omitted).

We and district court judges also have "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* Deciding a case under prong two saves scarce judicial resources by avoiding unnecessary decisions whether certain conduct violates a constitutional or statutory right, when it is beyond reproach that the conduct was not objectively unreasonable in light of existing law. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) . Skipping prong one and going to prong two may also be preferable when the briefing is relatively poor, and our deciding the case under prong one could "create a risk of bad decisionmaking." *Id.* at 239. That said, there are positive attributes to deciding a case under prong one, *id.* at 237, and every court of appeals or district court judge is "permitted to exercise their sound discretion in

-13-

deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand," *id.* at 236.

In this case, we exercise our discretion to decide the issue of qualified immunity under the second prong. Under prong two, a "[g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 131 S. Ct. at 2083 (alterations and internal quotation marks omitted). There is no need for a case on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant's position should know about the constitutionality of the conduct." *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998). Finally, "we do not consider the subjective intent, motives, or beliefs of the officials." *Conn. ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 106 (2d. Cir. 2003) (citation omitted). Instead, we use an objective standard for judging the actions of state and federal officials. *See Crawford-El*, 523 U.S. at 590.

Hughes's actions were not objectively unreasonable in light of the law that existed at the time of her conduct. This Court has held that when a plaintiff is subject to a collective bargaining agreement that provides adequate post-deprivation procedures, "such post-deprivation procedures . . . are sufficient to satisfy due process." *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003). We observed in *Harhay* that, in the collective bargaining context, "[c]ourts have held that . . . post-deprivation procedures, providing for a hearing to contest a challenged employment decision, are sufficient to satisfy due process." *Id.*

-14-

(citing *Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988); *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 102 (1st Cir. 2002)). "[T]here is no due process violation where . . . pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008).

It is undisputed that Coollick utilized the grievance procedures provided for in the collective bargaining agreement. Coollick had a hearing and received a favorable decision, restoring her to the status she had prior to Hughes's actions and awarding her back pay and benefits. Coollick makes no suggestion that her rights have not been "fully remedied" by the procedures in place and by the arbitral award, though she persists with this lawsuit for additional recovery of punitive damages and reimbursement of attorneys' fees and costs. As for the form of the notice, Coollick received notice in November 2007 for an action that became effective nearly eight months later. Whatever imperfections the district court identified in that notice sent on November 14, 2007, it conveyed to Coollick enough information to file a grievance. The notice also gave Coollick an opportunity to respond by inviting her to submit any questions she may have to human resources.

We do not decide whether the specific contents of the letter and the grievance procedures are sufficient under the Constitution. We skip step one of the qualified immunity analysis and instead decide that "existing precedent" has not "placed the . . . constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083. Quite to the contrary, the existing precedent, *Harhay* and *Adams* in particular, seem to dictate that no constitutional violation occurred here at all. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright

lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)). Viewed in the light most favorable to Coollick, Hughes's actions lie somewhere in the gray area in the spectrum of what satisfies due process given the particular facts of this case. Hughes sent Coollick reasonably clear notice well in advance of any deprivation, which allowed Coollick to avail herself of the collective bargaining agreement's grievance procedures. Without doubt, and certainly undisputed, Coollick received adequate post-deprivation remedies. There is nothing objectively illegal, in a constitutional sense, embodied in Hughes's actions or in what happened to Coollick. Hughes may have been wrong in her view that Coollick did not have certain rights under the collective bargaining agreement, but Coollick was able to avoid any harm through the very grievance procedures in place to remedy any such deprivation. As no constitutional bright lines were transgressed by Hughes in the course of handling Coollick's termination, Hughes is entitled to qualified immunity.

### *Conclusion*

For the foregoing reasons, the judgment of the district court is REVERSED. The case is REMANDED to the district court with instructions to enter summary judgment in favor of Hughes.