24-2833-cv
*Sacaza v. City of New York*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

––––––––––––

August Term 2025

(Argued: September 18, 2025    Decided: March 11, 2026)

Docket No. 24-2833-cv

––––––––––––

DENNIS SACAZA,

*Plaintiff-Appellee*,

*- against -*

CITY OF NEW YORK, DETECTIVE MICHAEL FRIEDMAN,

*Defendants-Appellants*.

JOHN DOES 1-3, OF THE 71ST PRECINCT,

*Defendants.*[*]

––––––––––––

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

––––––––––––

Before:            CHIN and PÉREZ, *Circuit Judges*.[**]

––––––––––––

[*] The Clerk of Court is respectfully directed to amend the caption accordingly.

[**] Circuit Judge Alison J. Nathan, originally a member of the panel, was unavailable at the time of argument.  Accordingly, the appeal is being decided by the remaining members of the panel, who are in agreement.  *See* 2d Cir. IOP E(b).

Interlocutory appeal from a decision of the United States District Court for the Eastern District of New York (Bulsara, *J.*), denying summary judgment to a New York City detective on claims against him of false arrest and malicious prosecution. The district court held that because questions of fact existed as to whether there was arguable probable cause to arrest and charge the plaintiff, the defendant had not established his entitlement to qualified immunity and therefore summary judgment was precluded. We disagree and accordingly reverse the decision of the district court.

REVERSED AND REMANDED.

_____

CHIDI A. EZE, New York, NY, *for Plaintiff-Appellee.*

AMY MCCAMPHILL, Assistant Corporation Counsel (Richard Dearing & Jeremy W. Shweder, Assistant Corporation Counsel, *on the brief*), *for* Muriel Goode-Trufant, Acting Corporation Counsel for the City of New York, New York, NY, *for Defendants-Appellants.*

_____

CHIN, *Circuit Judge*:

This case arises from the arrest and prosecution of plaintiff-appellee Dennis Sacaza after a minor accused him of sexually assaulting her while on a

- 2 -

Metropolitan Transit Authority ("MTA") bus. Following an investigation, the New York City Police Department (the "NYPD") arrested Sacaza and defendant-appellant Michael Friedman, an NYPD detective, charged Sacaza with several violations of the New York Penal Code. After the charges were dismissed on speedy trial grounds, Sacaza commenced this action against Friedman and the City of New York (the "City").

On appeal, Friedman argues that he is entitled to qualified immunity because he had at least arguable probable cause to arrest and charge Sacaza. Sacaza counters that video footage of the incident is plainly exculpatory and casts such doubt on the minor's statement that no reasonable officer could have believed that probable cause existed. For the reasons set forth in more detail below, we conclude that arguable probable cause existed and therefore we REVERSE the district court's denial of summary judgment as to qualified immunity on the federal claims against Friedman and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

**I.     *The Facts***

**A.     *The MTA Footage***

On the morning of October 18, 2019, video footage from an MTA bus traveling through Brooklyn (the "MTA Footage") captured the following:[1] At approximately 7:53 AM, a teenage girl (the "Complainant") boarded a crowded MTA bus on her way to school.  Upon boarding, the Complainant was standing to the right of and slightly behind an individual later identified as Sacaza.  At this point in the video, the Complainant and Sacaza were located at the very front of the bus, on the passenger side between the driver and the doors.  Sacaza's left hand was holding onto a railing and his right hand was out of view, but he was carrying a bag.  While the Complainant and Sacaza were at the front of the bus, the MTA Footage does not definitively show any contact between them.  But again, Sacaza's right hand was not visible to the camera.  Around 7:59 AM, Sacaza stepped off the bus to allow others to board, and the Complainant moved

---

[1] On an interlocutory appeal of a decision denying summary judgment on the basis of qualified immunity, we accept stipulated facts, the plaintiff's alleged facts, or facts favorable to the plaintiff that the district court concluded the jury might find, *see Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004), and construe the evidence in favor of the non-moving party.  *See Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012).

further toward the middle of the bus. Sacaza then re-boarded the bus and stood a few steps away from the Complainant. After about fifteen seconds, Sacaza moved further toward the middle of the bus and stood directly behind the Complainant. Still, Sacaza's left hand was holding onto a railing, and his right hand was out of view.

Sacaza stood directly behind the Complainant for just over a minute. During this minute, the Complainant looked back several times and appeared uncomfortable, though the MTA Footage still does not definitively show any contact between Sacaza and the Complainant. After seeming to notice the Complainant's apparent discomfort, a nearby passenger offered the Complainant a seat. Once seated, the Complainant appeared to take several videos of Sacaza. About a minute and a half later, as Sacaza began to exit the bus with the Complainant following behind, the Complainant showed the nearby passenger something on her phone and appeared to begin crying. The female passenger consoled the Complainant by rubbing her side as the Complainant exited the bus. After exiting at the front of the bus, Sacaza immediately boarded again through a different door near the middle of the bus and continued riding the bus.

**B.** *The Investigation*

After arriving at school on October 18, the Complainant notified someone at the school about the alleged assault. The school then notified the Complainant's father and called 911. The Complainant's father also called 911 and spoke to Officer Hernandez from the 71st precinct. The 71st precinct then contacted Friedman at the Brooklyn Special Victims Bureau.

The Complainant went to Friedman's office the same day. Friedman interviewed her and filled out a general investigation report concerning the alleged assault. During the interview, the Complainant texted Friedman videos of Sacaza that she took while she and Sacaza were still on the bus. Friedman then used still images from those videos to create wanted posters with Sacaza's face on them, and Friedman later circulated the wanted posters to the media. Friedman also requested the MTA Footage, which he received on or about October 22, 2019.

On October 25, 2019, Friedman conferred with Sergeant Freyre. After reviewing Friedman's media request concerning Sacaza, who was still unidentified at the time, Sergeant Freyre informed Friedman that the man he was looking for was likely Sacaza, who had been the subject of a 2017 city wide

"public lewdness pattern" case and a person of interest in a different Transit Special Victims case for public lewdness.  J. App'x at 184; *see also id.* at 187.

On October 26, 2019, Detective Chery presented the Complainant with a double-blind photo array of six individuals.[2]  The Complainant identified Sacaza in the photo array.  Sacaza was arrested on November 14, 2019.  The same day, Friedman presented the Complainant with an in-person lineup where the Complainant again identified Sacaza.  The Complainant noted she was "[a]bsolutely [p]ositive" about her identification of Sacaza.  *Id.* at 197.

The next day, November 15, 2019, Friedman signed the initial criminal complaint charging Sacaza with forcible touching, sexual abuse, harassment, and endangering the welfare of a child.  Friedman listed only the Complainant as a source of information for the initial criminal complaint.  The initial criminal complaint details that the Complainant boarded an MTA bus, and that while located at the front of the MTA bus, Sacaza "rubbed [the

---

[2] A double-blind photo array is a procedure administered by an officer who is not involved in the investigation, does not know the identities of the people in the photos, does not know the suspect, and does not know where in the array the suspect is located. *See Serrano v. Royce*, No. 20-CV-06660, 2023 WL 9418661, at *2 (S.D.N.Y. Dec. 20, 2023), *report and recommendation adopted*, No. 20-CV-06660, 2024 WL 295374 (S.D.N.Y. Jan. 25, 2024); *United States v. Loyd*, No. 19-CR-6186, 2020 WL 2027003, at *8 (W.D.N.Y. Apr. 28, 2020), *report and recommendation adopted*, No. 19-CR-6186, 2020 WL 4754472 (W.D.N.Y. Aug. 17, 2020).

Complainant's] vagina and inner thigh with [his] hand" without her consent. *Id.* at 218. It further states that after the Complainant moved further back on the MTA bus, Sacaza followed her and "brushed [his] penis against [her] buttocks in a side to side motion." *Id.*

A second criminal complaint listing the same charges contained in the initial criminal complaint was signed by a Kings County assistant district attorney on November 19, 2019. The second criminal complaint also only listed the Complainant as the source of information. The second criminal complaint includes the same two allegations as the first criminal complaint, in addition to an allegation that Sacaza pulled down the Complainant's pants.

While not included in either criminal complaint, the Complainant also alleged on the day of her initial report that after they both exited the MTA bus, Sacaza followed her for three blocks.

Sacaza was released from custody on December 12, 2019. In April of 2021, the case against Sacaza was dismissed on speedy trial grounds.

## II.    *Procedural History*

On May 19, 2022, Sacaza commenced this action against the City, Friedman, and several John Does. Sacaza's complaint asserts claims against

Friedman for false arrest, malicious prosecution, and denial of his right to a fair trial pursuant to 42 U.S.C. § 1983 and New York state law. Sacaza's complaint also asserted similar claims against the City for false arrest under the theory of *respondeat superior*, and for *Monell* liability. The parties consented to jurisdiction before a Magistrate Judge, 28 U.S.C. § 636(c).[3] In November 2023, after the conclusion of discovery, Defendants moved for summary judgment arguing, *inter alia*, that Friedman was entitled to qualified immunity, and Sacaza filed a cross-motion for summary judgment. The district court granted Defendants' motion for summary judgment on Sacaza's fair trial, *Monell*, and state law false arrest claims. *See Sacaza v. City of N.Y.*, No. 22-cv-02954, 2024 WL 4333688, at *12 (E.D.N.Y. Sept. 26, 2024).

The district court also denied both parties' motions for summary judgment on the federal false arrest claim, and the state and federal malicious prosecution claims. The district court concluded that "a reasonable jury could conclude that the [MTA Footage] shows there was no physical contact between Sacaza and the [Complainant] at any time." *Id.* at *6. It further concluded that the MTA Footage, combined with inconsistencies about the Complainant being

---

[3] The case was heard by then-Magistrate Judge Sanket J. Bulsara beginning in April 2023. Judge Bulsara was sworn in as a District Judge on December 20, 2024.

followed by Sacaza, "at a minimum, raises doubts about the complainant's recitation of events." *Id.* At the same time, however, the district court also concluded that a reasonable jury could find "that the contradictions between the [MTA Footage] and the [Complainant's] statements do not raise doubts as to her veracity, and therefore determine that there was probable cause to arrest." *Id.* at *7. Based on those conclusions, the district court held that Sacaza raised "a genuine issue of fact as to whether the video raised doubt about the veracity and reliability of the [Complainant's] statement," *id.*, and denied Friedman summary judgment on Sacaza's federal false arrest claim and the state and federal malicious prosecution claims. This appeal followed.[4]

## DISCUSSION

I.    *Applicable Law*

   A.    *Appellate Jurisdiction*

      This Court possesses jurisdiction to review an interlocutory appeal of a district court's denial of a motion for summary judgment based on qualified immunity where "the underlying issues raise only questions of law." *Bryant v.*

---

[4] The district court's rulings dismissing Sacaza's fair trial and state law false arrest claims against Friedman and the claims against the City are not before this Court on this appeal.

*Egan*, 890 F.3d 382, 386 (2d Cir. 2018). Appellate jurisdiction generally does not exist "if resolution of the immunity defense depends upon disputed factual issues." *Washington v. Napolitano*, 29 F.4th 93, 103 (2d Cir. 2022) (citation modified). A district court's conclusion that a genuine dispute of material fact exists, however, is not enough to preclude this Court's review in some circumstances. *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). This Court may review the denial of qualified immunity where "it can be resolved on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Id.* (citation modified). Ultimately, Friedman bears the burden of establishing our appellate jurisdiction. *See Jok v. City of Burlington*, 96 F.4th 291, 293-94 (2d Cir. 2024).

Here, Friedman has carried his burden to establish our jurisdiction over this appeal. Because we are able to resolve the question of qualified immunity based on undisputed facts and facts the district court concluded a jury could reasonably find in Sacaza's favor, we have appellate jurisdiction.

- 11 -

**B.** *Standard of Review*

Review of the district court's denial of summary judgment involving qualified immunity is *de novo*, and summary judgment is appropriate only where the moving party meets its burden of establishing that no genuine issue of material fact exists and that the undisputed facts entitle them to judgment as a matter of law. *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012).

**C.** *Qualified Immunity*

In certain circumstances, qualified immunity shields government actors, such as police officers, from liability for actions taken in their official capacity -- providing "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Dufort v. City of New York*, 874 F.3d 338, 354 (2d Cir. 2017) (citation modified). To determine whether a police officer is entitled to qualified immunity, courts consider: (1) whether the facts evince that the police officer violated a statutory or constitutional right; and (2) whether "the right was clearly established at the time of the challenged conduct." *Washington*, 29 F.4th at 105 (citation modified). Courts may use their discretion in deciding the order in which to approach a qualified immunity analysis, *see Coollick*, 699 F.3d at 219-20, and here, we begin with the second prong.

Under the second prong of a qualified immunity analysis, "[a] right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what they are doing violates that right." *Soukaneh v. Andrzejewski*, 112 F.4th 107, 116 (2d Cir. 2024) (citation modified). In the context of an arresting officer, qualified immunity applies where it was objectively reasonable to believe there was probable cause to make the arrest, or there was arguable probable cause -- that is, where reasonable police officers could disagree as to the existence of probable cause. *See Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016).[5] The party asserting a qualified immunity defense bears the burden of showing actual probable cause or arguable probable cause. *See Coollick*, 699 F.3d at 219. We discuss both.

---

[5] Under New York state law, the test for qualified immunity or its equivalent may vary from that of federal law. *See Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) (noting that, similar to the federal doctrine, New York law instructs a court to dismiss a false arrest claim at the summary judgment stage if the officer's probable cause determination was objectively reasonable, without any consideration of an officer's subjective intent); *but see Lore v. City of Syracuse*, 670 F.3d 127, 166 (2d Cir. 2012) (noting that, unlike the federal standard, "the New York standard for entitlement to qualified immunity has both objective and subjective components"). Here, the district court did not conduct an analysis under New York law. Instead, it concluded that "[b]ecause the state law claim relie[d] on the same facts as the federal claim, summary judgment [was] inappropriate . . . ." *Sacaza*, 2024 WL 4333688, at *12. On remand, the district court should evaluate Friedman's qualified immunity defense to Sacaza's state malicious prosecution claim in light of our holding that, as a matter of federal law, Friedman had arguable probable cause.

### 1. *Probable Cause*

Actual probable cause is a "complete defense" to federal false arrest claims. *Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022). The same is true for malicious prosecution claims, *see Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003), unless intervening facts discovered between the arrest and the initiation of prosecution dissipate probable cause. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).

"To determine whether probable cause existed, we consider the totality of the circumstances, reviewing plainly exculpatory evidence alongside inculpatory evidence to ensure the court has a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest." *Triolo*, 24 F.4th at 106 (citation modified). We focus our analysis on the "facts available to the officer at the time of arrest and immediately before it." *Id.* (citation modified). "Law enforcement officers have probable cause to arrest when they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (citation modified).

Unless exculpatory evidence or circumstances that "raise doubts as to the alleged victim's veracity" arise, probable cause is present where a police officer relies on such victim's identification of the suspect and statement of the alleged crime. *Id.* (citation modified); *see Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013); *see also Alberty v. Hunter*, 144 F.4th 408, 416 (2d Cir. 2025) (finding that a victim's in-person identification "alone would be enough to provide Defendants with probable cause to arrest"); *Mara v. Rilling*, 921 F.3d 48, 75-76 (2d Cir. 2019) (holding that even "undoubtedly suggestive" photo identifications can inform a finding of probable cause).

Even considering all the above-described parameters, probable cause "is a fluid standard" and law enforcement is not required to rely on "hard certainties" or a belief that, more likely than not, a crime has been committed. *Figueroa*, 825 F.3d at 99 (citation modified). "Rather, it requires only facts establishing the kind of fair probability on which a reasonable and prudent person, as opposed to a legal technician, would rely." *Id.* (citation modified).

### 2. *Arguable Probable Cause*

Even absent actual probable cause, police officers are entitled to qualified immunity on federal claims if arguable probable cause existed. *Betts*, 751 F.3d at 82-83. Again, arguable probable cause existed here if it was objectively reasonable for Friedman to arrest Sacaza or if police officers of reasonable competence could have disagreed as to whether probable cause existed. *See Figueroa*, 825 F.3d at 100.

## II. *Application*

The district court ruled that summary judgment was inappropriate because a reasonable jury could conclude "there was no physical contact" between Sacaza and the Complainant and that inconsistencies about her being followed raise "doubts" about the Complainant's recitation of events. *Sacaza*, 2024 WL 4333688, at *6-7. The district court also ruled, however, that a reasonable jury could conclude that the contradictions in the Complainant's statements "do not raise doubts as to her veracity, and therefore determine that there was probable cause to arrest." *Id.* at 16. Hence, the district court determined that a reasonable jury could find *either* probable cause *or* the lack thereof. If a reasonable jury *could* find probable cause, then so could a reasonable

officer. And if a reasonable officer could find probable cause, then Friedman is entitled to qualified immunity.

Based on the undisputed facts in the record, a reasonable police officer in Friedman's position could have found probable cause that Sacaza had touched the Complainant inappropriately. While the Complainant's statements and identifications of Sacaza served as Friedman's principal basis for finding probable cause, the MTA Footage and other information provided objective evidence for a reasonable police officer to arrest and charge Sacaza. The record contains the following undisputed evidence to support the conclusion that Sacaza sexually assaulted the Complainant: (1) the Complainant reported the alleged assault to her school and the police almost immediately; (2) the Complainant identified Sacaza as her assailant on two separate occasions, including once in-person; (3) Friedman learned that Sacaza was a person of interest in other public lewdness incidents; (4) the MTA Footage shows the Complainant being uncomfortable and looking back several times while Sacaza is positioned directly behind her for more than a minute; (5) the MTA Footage shows that the Complainant felt the need to and did take videos of Sacaza, which she later shared with Friedman; and (6) the MTA Footage shows that the

Complainant was so visibly disturbed by Sacaza that a nearby passenger felt the need to console her. Based on this evidence, a reasonable police officer could have believed that Sacaza committed a crime justifying arrest.

Sacaza argues that no probable cause existed because the MTA Footage raises doubts as to the Complainant's veracity. While the record does show that there were inconsistencies in the Complainant's statements, this argument fails, for a reasonable police officer could have found that the inconsistencies did not undermine the veracity of a fifteen-year-old girl in distress.

The MTA Footage of the alleged assault both corroborates and contradicts parts of the Complainant's statements to the NYPD. For example, the MTA Footage contradicts the Complainant's allegation that Sacaza followed her for three blocks because it shows Sacaza continued riding on the bus after the Complainant's stop. And the MTA Footage does not definitively show that an assault took place. But the MTA Footage does show that Sacaza repositioned himself to stand right behind the Complainant, and it also shows her great discomfort and emotional reaction. The MTA Footage also reveals that the passenger felt it necessary to offer a seat to the Complainant and to console her.

Arguable probable cause exists where reasonable police officers could disagree on whether there was probable cause. *Figueroa*, 825 F.3d at 100. Therefore, it follows that to dissipate arguable probable cause, the circumstances or facts casting doubt on a victim's veracity need to be such that *no* reasonable police officer could find that probable cause existed. *See Triolo*, 24 F.4th at 108. Even assuming there were inconsistencies in the Complainant's statements, at most, Sacaza's arguments show only that reasonable police officers could disagree. Thus, at the very least, arguable probable cause existed.

Sacaza also argues that the MTA Footage is plainly exculpatory because it does not show that there was an inappropriate interaction, or that he followed the Complainant after she exited the bus. For similar reasons, this argument is also unavailing.

Evidence is plainly exculpatory where it shows that a person cannot be guilty of the relevant crime as a matter of law. *Alberty*, 144 F.4th at 417. Here, the MTA Footage neither definitively proves nor disproves Sacaza's alleged assault of the Complainant. While Sacaza is correct that the MTA Footage does not show him following the Complainant after exiting the bus or show an outright sexual assault, it also supports many aspects of the Complainant's

statements. While the MTA Footage is arguably exculpatory in some respects, it is also inculpatory in others. Even assuming Friedman erred and the Complainant made up the accusations or simply got it wrong, a reasonable officer could have believed that there was a basis for arresting and charging Sacaza. *See Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) ("[I]n qualified immunity cases, we are not concerned with the correctness of the [officer's] conduct, but rather the objective reasonableness of their chosen course of action given the circumstances . . . ." (citation modified)).

Lastly, Sacaza argues that it should be left to a jury to determine whether Friedman had probable cause. This argument fails, however, because where, as the district court concluded here, a reasonable jury could find Friedman had probable cause to arrest and charge Sacaza or the lack thereof, the appropriate remedy is not to leave that determination to the jury, but to grant summary judgment on qualified immunity to the officer. *See Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001).

\* \* \*

"We recognize the apparent anomaly of holding that summary judgment is appropriate when a trier of fact would find that reasonable officers

could disagree." *Lennon*, 66 F.3d at 421. But in the context of arguable probable cause, law enforcement officers must be granted qualified immunity if a reasonable jury *could* find that there was probable cause. *See id.* at 424-25.

## *CONCLUSION*

For the reasons discussed above, the district court's decision is REVERSED, and the case is REMANDED for entry in favor of Friedman on the federal claims and for further proceedings consistent with this opinion, including resolution of the state claims.