*Batt v. Buccilli*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of February, two thousand eighteen.

Present:
>            RALPH K. WINTER,
>            DEBRA ANN LIVINGSTON,
>            DENNY CHIN,
>                 *Circuit Judges*,

---

LUANN BATT, JOSEPH BATT, TIMOTHY BATT,

>            *Plaintiffs-Appellants*,

>       v.                                                      17-1210

JOSEPH BUCCILLI, in his personal capacity,

>            *Defendant-Appellee.*

---

| For Plaintiffs-Appellants: | PETER K. KAMAKAWIWOOLE, JR. (James R. Mason III, *on the brief*), Home School Legal Defense Association, Purcellville, VA. |
|---|---|
| For Defendant-Appellee: | NORMAN E.S. GREENE (Paula M. Eade Newcomb, *on the brief*), Bouvier Law LLP, Buffalo, NY. |

Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

LuAnn, Timothy, and Joseph Batt (collectively, "the Batts") appeal from a March 31, 2017 judgment of the United States District Court for the Western District of New York, dismissing their suit on the defendant's motion for summary judgment under Federal Rule of Civil Procedure 56. The Batts filed this 42 U.S.C. § 1983 suit against Joseph Buccilli ("Buccilli"), a police officer who entered their home on April 17, 2012 to conduct a "welfare check" on an octogenarian who resided there. The Batts allege that Buccilli trespassed on their property "without a warrant, probable cause, or exigent circumstances," and thus violated their Fourth Amendment rights. App'x at 17, ¶ 85. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

### A.     Standard of Review

"We review *de novo* a district court's grant of summary judgment after construing all evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Sotomayor v. City of New York*, 713 F.3d 163, 164 (2d Cir. 2013). "Summary judgment is appropriate only when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

### B.     Overview of Qualified Immunity

"The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). It is designed to protect "all but

2

the plainly incompetent or those who knowingly violate the law." *Id.* at 1867 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A plaintiff may overcome a qualified immunity defense only by showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Al-Kidd*, 563 U.S. at 735 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

We may decide a case on the second qualified immunity prong without reaching the merits of the first prong. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In fact, resolving a case on the second prong is preferable "when it is beyond reproach that the conduct [in question] was not objectively unreasonable in light of existing law." *Coollick v. Hughes*, 699 F.3d 211, 220 (2d Cir. 2012). We believe this is such a case, and we will therefore exercise our discretion under *Pearson* and—like the district court—resolve this matter on the second prong.

### C. "Clearly Established" Right

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. A police officer's physical intrusion into an individual's home constitutes a Fourth Amendment "search." *See United States v. Jones*, 565 U.S. 400, 406–07 (2012); *Kyllo v. United States*, 533 U.S. 27, 37 (2001) (explaining that "any physical invasion of the structure of the home, 'by even a fraction of an inch,'" is a "search" (quoting *Silverman v. United States*, 365 U.S. 505, 512 (1961))). "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." *Pearson*, 555 U.S. at 243–44. For these purposes, we must examine "the precise situation" that the officer encountered, and examine whether it was "clearly established" at the time of the incident that his conduct violated the law. *Ziglar*, 137 S. Ct. at 1866. In other words, given the law at the time,

3

"every reasonable official [at the time must] have understood that" the officer violated it. *Coollick*, 699 F.3d at 220 (quoting *al-Kidd*, 131 S. Ct. at 2083).

It is settled law—and *was* settled law on April 17, 2012—that a warrantless search inside of a home is "presumptively unreasonable." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)). However, this presumption is rebuttable. *See Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam). There are times when the exigency of a situation is "so compelling" that a warrantless search of home is "objectively reasonable." *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978)). One such exigency exists when there is a "need to assist persons who are seriously injured or threatened with such injury." *Id.* (quoting *Brigham City*, 574 U.S. at 403). This is known as the "emergency aid exception." *Id.* Under this exception, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City*, 547 U.S. at 403. The inquiry is not whether the officer subjectively believed that an occupant needed help. *Fisher*, 558 U.S. at 49. Rather, the dispositive question is simply "whether there was '*an objectively reasonable basis* for believing' that medical assistance was needed, or persons were in danger." *Id.* (emphasis added) (quoting *Brigham City*, 547 U.S. at 406). Thus, to determine whether an officer who relies on the emergency aid exception deserves qualified immunity, we must determine if, given the circumstances confronting that officer, it is at least debatable that he had an "objectively reasonable basis" for believing that an individual inside a home needed medical assistance. *See Coollick*, 699 F.3d at 220.

We conclude that it was (at least) debatable that Buccilli had an "objectively reasonable" basis for deducing that an individual inside the Batts' house required medical attention on April 17, 2012. "We start by defining 'the circumstances . . . [Buccilli] confronted.'" *District of*

4

*Columbia v. Wesby*, No. 15-1485, 2018 WL 491521, at \*12 (U.S. Jan. 22, 2018) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). No genuine dispute exists over the following facts: (1) Buccilli was aware that Adult Protective Services ("APS") had called 911 and told the dispatcher that an elderly individual inside the Batts' home could be in danger; (2) Buccilli's co-officer, Joseph Kadi ("Kadi"), had informed Buccilli that "a family member" had contacted APS, and that the family member was "gravely concerned that they had not seen or been allowed access" to the elderly individual "in almost two weeks," App'x at 63[1]; (3) upon arriving at the Batts' home, the two officers encountered Joseph Batt, who refused to provide his last name, and told the officers not to enter the house; and (4) Buccilli asked Joseph simply to physically bring the elderly individual outside—or even to a window—but Joseph did not, and instead retreated back into the house. The Batts have also failed to rebut the contention by Donna Locicero, a Senior APS Case Worker, that it is "very unusual" for an individual not to allow an officer into a home to conduct a welfare check, and that it would be reasonable to consider such behavior suspicious. *Id*. at 153. Given the circumstances facing Buccilli, we conclude that it would not have been "apparent" to a reasonable officer that Buccilli lacked an objective basis for thinking that someone inside the Batts' home required medical assistance. *See Ziglar*, 137 S. Ct. at 1867 (quoting *Anderson*, 483 U.S. at 640); *Fisher*, 558 U.S. at 49. As we made clear in *Tierney v. Davidson*, 133 F.3d 189 (2d Cir. 1998), we must consider the applicability of the emergency aid exception with "reference to

---

[1] The Batts dispute that Kadi told this to Buccilli, given Buccilli's statement inside the Batts' home that "I don't know the basis or the allegations of what the welfare concerns are." *See* App'x at 248, 251. But Buccilli testified under oath that Kadi provided him with this information. And Kadi stated in a sworn affidavit that he and Buccilli "discuss[ed] what information was known about the [APS] call" before they entered the Batts' house. *Id.* at 198. Buccilli's off-the-cuff remark inside the Batts' home is wholly consistent with this testimony and raises no material issue of fact as to its reliability. *See D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)).

the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences." *Id.* at 196–97 (quoting 3 Wayne LaFave, *Search and Seizure* § 6.6(a), at 391 (3d ed. 1996)). The circumstances facing Buccilli were sufficiently "ambiguous"—and the potential consequences sufficiently "serious"—as to make it (at least) arguable that his trespass was proper.

The Batts raise three arguments to support their contention that it was "clearly established" on April 17, 2012 that Buccilli's conduct fell outside the emergency aid exception; we reject all three. First, the Batts argue that the Supreme Court's decision in *Brigham City* clearly established that a "proffered 'emergency' must be clear, obvious, articulable, and imminent at the moment the officers enter the home." Br. for Pls.-Appellants at 25. But no language in *Brigham City* "clearly establishes" such a rule. In fact, just three years later in *Fisher*, the Supreme Court read *Brigham City* for the exact *opposite* proposition. *See Fisher*, 558 U.S. at 49 ("Even a casual review of *Brigham City* reveals [that] . . . [o]fficers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception."). The Batts point to no case from April 17, 2012 or before that reads *Brigham City* in such a fashion, which would be necessary to show that it should have been "apparent" that Buccilli was acting illegally. *See Ziglar*, 137 S. Ct. at 1867 (quoting *Anderson*, 483 U.S. at 640).

Next, the Batts argue that *Brigham City* and our decisions in *Tierney* and *Montanez v. Sharoh*, 444 F. App'x 484 (2d Cir. 2011), taken together, "forcefully illustrate" that an officer cannot invoke the emergency aid exception unless he is confronting an extraordinarily clear, violent, and urgent emergency. Br. for Pls.-Appellants at 27. But none of these cases state such a proposition. These cases simply involve *applications* of the emergency aid exception in situations that involved obvious and overt emergencies. *See Brigham City*, 547 U.S. at 401, 406; *Tierney*,

6

133 F.3d at 192–93, 196–97; *Montanez*, 444 F. App'x at 487. The simple fact that the officers in these cases acted *properly* does not, by implication, "clearly establish" that Buccilli acted *improperly*. *See Wesby*, 2018 WL 491521, at *11 ("It is not enough that [a] rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."). As the Batts themselves acknowledge, "'exigency' is a fact-dependent sliding scale." Br. for Pls.-Appellants. at 42. And for qualified immunity purposes, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant's position should [have] know[n] about the constitutionality of [his] conduct." *Coolick*, 699 F.3d at 220 (quoting *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)).

Finally, the Batts point to our decision in *Kerman v. City of New York*, 261 F.3d 229 (2d Cir. 2001).[2] In *Kerman*, several officers forced their way into an apartment based solely on an anonymous and unverified 911 call claiming that an individual inside the apartment posed a threat to others. *Id.* at 232, 235. We agreed with the defendant that "an uncorroborated and anonymous 911 call is [in]sufficient to establish probable cause for a warrantless entry into a dwelling." *Id.* at 236. Accordingly, the Batts argue that *Kerman* "clearly directed Lt. Buccilli that when he arrived at the Batts' home and did not observe any emergency, the reasonable thing to do was to search for more [corroborating] evidence instead of forcing his way in." Br. for Pls.-Appellants at 33.

---

[2] The Batts also cite our decision in *Harris v. O'Hare*, 770 F.3d 224 (2d Cir. 2014), *as amended* (Nov. 24, 2014), but that case does not help their argument. The officers in *Harris* claimed that their warrantless intrusion into a person's curtilage was justified because they needed to seize illegal guns "before anyone else could get to them." *Harris*, 770 F.3d at 232, 235. Although the officers invoked "exigent circumstances" to justify their trespass, they did not invoke the emergency aid exception. *See id.* at 233–37. Suffice it to say, such a dissimilar case to Buccilli's did not "place the [un]lawfulness of [Buccilli's actions] 'beyond debate.'" *Wesby*, 2018 WL 491521, at *11 (quoting *al-Kidd*, 563 U.S. at 741).

But Buccilli acted on more than simply an anonymous 911 call. According to Buccilli's testimony, he understood that APS had received a complaint from an *identified* family member, whose precise name and information APS withheld for confidentiality reasons. And upon arriving at the Batts' house, Buccilli encountered an individual who told him not to come inside, and declined to simply bring the allegedly endangered octogenarian outside (or to a window). As the Supreme Court emphasized this Term, although a rule can be "clearly established" even if there is no "case directly on point," *Wesby*, 2018 WL 491521, at *11 (quoting *al-Kidd*, 563 U.S. at 741), a plaintiff seeking to overcome a qualified immunity defense *must* "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Id.* (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam)); *see also Panetta v. Crowley*, 460 F.3d 388, 398–99 (2d Cir. 2006) (distinguishing *Kerman* in a case where, *inter alia*, a tipster was not "anonymous"); *Anthony v. City of New York*, 339 F.3d 129, 136–37 (2d Cir. 2003). Because the Batts have not identified such a case, we agree with the district court that qualified immunity shields Buccilli from suit.

\* \* \*

We have considered the Batts' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk